James L. COGNETTA, and Richard L. Booton, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18191.

United States Court of Appeals Ninth Circuit.

Feb. 15, 1963.

Alan S. Maremont, San Francisco, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. Chief, Crim. Div., Robert H. Filsinger, Asst. U. S. Atty., for appellee.

Before BARNES, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellants were convicted of concealing marihuana in violation of the provisions of 21 U.S.C. § 176a. A timely appeal was made to this court. We have jurisdiction under the provisions of 28 U.S.C. § 1291.

The record shows that on December 13, 1960, warrants of arrest were issued on the basis of a Commissioner's complaint charging appellants with a bank robbery alleged to have been committed on July 7, 1960. On the night of December 13, 1960, agents of the Federal Bureau of Investigation approached the residence located at 12655 Martha Street, North Hollywood, California, for the purpose of making the arrests. Agent Alexander and other agents approached the front door of the house. Pursuant to Alexander's orders and according to plan some of the agents went to the side of the house and others approached the rear of the house. Agent Alexander knocked on the front door and rang the doorbell. Almost simultaneously the door was opened from the inside by one Rene Gloor, a guest of the appellants. Immediately behind him was appellant Cognetta. Alexander identified himself, saying, "We are agents of the FBI and we have warrants of arrest for Cognetta and Booton." Alexander and other agents entered the premises, arrested appellants, and during the search of the premises found marihuana and other articles that were subsequently admitted into evidence at the trial.

The sole issue in this case is whether the evidence found as a result of the search of the premises was legally admissible into evidence.[1]

It is the contention of appellants that just prior to Alexander's entry at the front door another agent entered at the rear door without announcing his authority and purpose, that this entrance was illegal under the provisions of 18 U.S.C. § 3109,[2] and that the evidence found thereafter was inadmissible. Although they concede that the entry was proper (and the evidence admissible) if made at the front door first, they contend that the finding of fact of the district court that the entry at the front was first in point of time was erroneous. Therefore, regardless of the manner in which the entry at the rear of the house was made, if the evidence in the record viewed in the light most favorable to the government and the inferences to be drawn therefrom support the district court's finding, the conviction must be affirmed.

Agent Alexander, who was in charge of the arresting party and ordered some of the agents to guard the rear of the house, testified that "The orders were given that I would go to the front door and announce that we were the FBI, that we had the warrants for the arrest, and with that the back door was to be protected as well as each side of the house and when the door flew open, then we went in and almost simultaneously we were going in the front door they did go in the back door." He further testified as follows:

Q. "Were the men at the side of the house to enter in in any fashion from the side?

A. "They were to proceed to the front door and to the back door, of course after we had the men under arrest. We were just taking care of any eventualities as far as escape was concerned.

Q. "The men at the back door then were to be concerned with preventing people from leaving the house?

A. "That is true, and also entering after the announcement had been made.

\* \* \* \* \* \* \*

A. "The purpose of the people at the back door originally was to prevent any escaping. The entry and the command post was at the front door, as I have stated, and that was when the knock was given, the bell was rung, and the door almost simultaneously while I was doing that flew open and was opened by Mr. Gloor."

While there was some testimony by Cognetta and Gloor that the entry at the rear door occurred some seconds before the entry at the front door, Cognetta also testified as follows:

"When this René (Gloor) opened the front door, these FBI agents came in the back door and they were already on me, you know, they had grabbed me told me not to move and everything."

After considering all of the conflicting testimony the district court found "[t]hat he (Alexander) thereupon entered the room from the front, that simultaneously or thereabouts Agent Haymes together with Callahan and Canny, approached the back door; \* \* \* [t]hat the Agent then entered the house and that that entry was almost coincidental with the entry from the front door. I will hold as a matter of fact

1. A motion to suppress this evidence was made under Rule 41(e) of the Federal Rules of Criminal Procedure prior to trial and was denied by the district court.

2. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Appellants cite Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) in which the Supreme Court held that this statute, which by its terms applies only to the execution of a search warrant, also applies to an arrest without a warrant, and contend that the statute is equally applicable in the case of an arrest with a warrant.

872

that it was subsequent, if subsequent in seconds can be subsequent, in point of time to the announcement at the front door."

We think that the evidence amply supported the finding of the district judge that the entrance at the front door was first in point of time.[3]

Judgment affirmed.

3. It is therefore unnecessary to consider the testimony concerning the manner in which and the circumstances under which the entry at the rear of the house was made.