**Ralph A. VANELLA and George William Sullivan, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 19270.

United States Court of Appeals Ninth Circuit.

Sept. 2, 1966.

Rehearing Denied Oct. 10, 1966.

Joseph L. Strabala, San Francisco, Cal. (Court-appointed), Fryer, Tjensvold, Feix & Phillips, San Francisco, Cal. (Norman Tuttle, II, Oakland, Cal., on the brief), for appellants Vanella and Sullivan.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Barry Tarlow, Benjamine S. Farber, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge:

A panel of this court consisting of Judges Chambers, Orr and Hamley on April 20, 1965, rendered an opinion in the above case which was written by Judge Orr and concurred in by Judge Hamley. Judge Chambers dissented. That opinion is as follows:

## "IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RALPH A. VANELLA and GEORGE WILLIAM SULLIVAN, *Appellants,* vs. UNITED STATES OF AMERICA, *Appellee.* | No. 19,270 |

Appeal from the United States District Court
for the Southern District of California
Central Division

Before CHAMBERS, ORR and HAMLEY, Circuit Judges.

ORR, Circuit Judge:

Having been convicted on June 12, 1963, of possession of marihuana, Vanella and Sullivan appeal. They contend that their rights under the Fourth Amendment to the United States Constitution were violated in that federal and state officers subjected them to unlawful search and seizure in securing the marihuana upon the possession of which their prosecution was based and which was introduced into evidence against them. We conclude that their contention is valid and that the motion made to suppress the questioned evidence should have been granted.

In presenting the picture of that which transpired, a somewhat lengthy statement of the circumstances is required. On February 14, 1963, the Federal Grand Jury sitting in Los Angeles, California, returned an indictment against appellant Vanella and others charging violation of 21 U.S.C. § 176a and 18 U.S.C. § 371. The alleged violations involved a conspiracy on or about January 1, 1962, relating to the unlawful transportation and concealment of marihuana.[1] This was district court case No. 31,832. On the basis of this indictment the United States District Court, in the presence of the foreman of the Grand Jury and United States Customs Agent Neil Greppin, issued a warrant for the arrest of appellant Vanella. The events which followed were the subject of the indictment in district court case No. 31,936, in which the convictions of Vanella and Sullivan were obtained and upon which this appeal was taken.

At approximately 9:00 P.M. that evening Agent Greppin and Agent Bertram Falbaum arrived at the residence of appellant Vanella in Los Angeles. Both agents went to the rear of the house, stepped up on the back porch steps, and looked into the house through a window. They observed appellants Vanella and Sullivan and Vanella's wife in the living room. Agent

---

1. Vanella was brought to trial on these charges. At the completion of the government's case a motion for acquittal by appellant Vanella was granted on May 10, 1963.

Falbaum stationed himself at the corner of the building from which point he could observe the front and rear doors of the house. Agent Greppin proceeded to the front door and knocked. A female voice inquired as to who was knocking, whereupon Greppin identified himself, stated he was from United States Customs, and asked to talk to Vanella. Shortly thereafter, appellant Vanella came running out the back door and started down the steps. Agent Falbaum called to him and Vanella turned and ran back into the house. Agent Falbaum followed Vanella up the steps and into the house, where Vanella apparently ran into Sullivan who seemed to be heading for the back door. Before running into the house Agent Falbaum called to Agent Greppin to the effect that appellants were attempting to escape out the back door. Agent Greppin forced the front door and entered to find Agent Falbaum with appellants in the dining room. As Agent Greppin joined the men appellant Sullivan ran into the bathroom where he began washing his hands in a bathtub full of water. Agent Greppin ran after him and asked him to return to the dining room, which he did. Agent Greppin then, having observed a bulge in Sullivan's right front pocket, removed a waxed paper bag containing 88 grains of marihuana. Appellant Sullivan was then placed under arrest for possession of marihuana. Neither Agent Greppin nor Agent Falbaum had seen appellant Sullivan at any time prior to their arrival at Vanella's residence, nor had they any information concerning him.

After appellant Sullivan was returned to the dining room from the bathroom, appellant Vanella was handcuffed and advised that he had been indicted by the Federal Grand Jury for violation of the federal laws pertaining to marihuana. Then, following a call by Mrs. Vanella to an attorney, Agent Greppin called the Los Angeles Police Department for assistance. Approximately twenty minutes later two officers arrived and together with Agent Falbaum searched the Vanella residence. The search produced two packages of marihuana—260 grams were found in a bedroom underneath a bed and 411 grams were found in the bathroom underneath the bathtub. Subsequent to the finding of the three bags of marihuana, appellant Vanella told Agent Greppin that said three bags comprised all the marihuana in the house and that it had come up from Mexico. Vanella stated also that he had given to appellant Sullivan the marihuana that was seized from Sullivan. Appellant Sullivan told Agent Greppin that he did not deal in marihuana, but that he smoked it.

Appellants Vanella and Sullivan, together with the marihuana that had been seized, were taken to the Los Angeles police station. Vanella and Sullivan were booked. Subsequently a trial was had. At its inception a motion to suppress evidence—including the three packages of marihuana mentioned above—was made by appellants. The motion was denied and the three packages of marihuana admitted into evidence. The trial judge, sitting without a jury, found appellant Vanella guilty on three counts of violation of 21 U.S.C. § 176a and found appellant Sullivan guilty of one count of violation of 21 U.S.C. § 176a. Vanella received sentences of 10 years on each count, to run concurrently. Sullivan received a sentence of 6 years.

Appellants contend that the trial court erred in denying their motion to suppress evidence seized at Vanella's residence. We agree. The seizure of the marihuana from the person of appellant Sullivan and from the home of appellant Vanella was unreasonable and in violation of the Fourth Amendment to the United States Constitution.

First, the search of appellant Sullivan was illegal. The officers had obtained no search warrant. The search of Sullivan was made before he

had been arrested [2] and therefore cannot be justified as a search incident to a lawful arrest.[3] A search not pursuant to a search warrant nor incident to a lawful arrest has been found to be proper only in certain exceptional circumstances,[4] not present in this case. Hence, the fruit of the search of Sullivan, 88 grains of marihuana, was inadmissible. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

Likewise, the search of appellant Vanella's residence was illegal. The Customs Agents that came to his residence to arrest him had no apparent reason to believe that Vanella was then engaged in any narcotics violation. The indictment upon which the warrant for his arrest was based concerned an alleged conspiracy that occurred more than a year previous. In view of this a search of Vanella's entire residence had no apparent rational connection to the alleged conspiracy for which Vanella was indicted and arrested.[5] Such a search therefore cannot be justified as a search incident to an arrest on the charge in the indictment. Furthermore, the discovery of marihuana on the person of Sullivan cannot be relied on to justify a search of the entire premises for further evidence of a current violation of federal laws relating to marihuana. In light of our determination that the seizure of the evidence from the person of Sullivan was illegal

and the evidence inadmissible, the product of any further search, necessarily based upon this evidence, is likewise inadmissible. This involves no more than a fair application of the 'fruit of the poisonous tree' concept discussed in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Failure to grant the motion to suppress and the allowance of the marihuana into evidence constituted reversible error. Other points are urged for reversal, but because of the view we take of the illegality of the searches, we find it unnecessary to consider them.

Judgment reversed.

CHAMBERS, Circuit Judge (dissenting):

I dissent. I would think that we would be justified in upholding the searches under Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. I do not think Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, compels the result the majority reaches. It is my belief, on the testimony most favorable to the government, the searches were reasonable.

The appellants have other points for reversal which I do not accept, but

2. Agent Greppin testified that he arrested Sullivan only after he had seized the marihuana from his pocket. Furthermore, in our view the actions of Agents Greppin and Falbaum before the seizure of the marihuana cannot be considered to be an arrest. See Davis v. People of State of California, 341 F.2d 982 (9 Cir. 1965).

3. In this Circuit we have held that in certain "Exigent circumstances" a search can be made prior to an arrest of a person. A prior search may be valid as incident to a substantially contemporaneous arrest without a warrant if the arresting officers had probable cause for the arrest at the time of the search, and the circumstances suggested that immediate search

was necessary to preserve material subject to seizure. See discussion and collection of cases in Cipres v. United States, 343 F.2d 95, 98, n. 9 (9 Cir. 1965). Such circumstances certainly do not exist in this case.

4. See Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Ventresca, 380 U.S. 102, n. 2, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

5. See Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, (1948); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L. Ed. 374 (1931).

since the majority does not reach them, neither do I."

On May 20, 1965, appellee United States of America filed a petition for rehearing entitled Ralph A. Vanella, Appellant, vs. United States of America, Appellee, a copy of which petition is set out in the footnote.[1] At oral argument

I.

"IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| RALPH A. VANELLA, *Appellant,* vs. UNITED STATES OF AMERICA, *Appellee.* | No. 19,270 |

Petition for Rehearing

Appellee, United States of America, respectfully petitions this Honorable Court for a rehearing of the appeal in the above-entitled case for the following reason. Appellant, Ralph A. Vanella, no doubt in good faith, but inadvertently, stated in his argument that the crime for which appellant Vanella was originally charged in Indictment No. 31823 was committed on or about January 1, 1962, which would have been over a year prior to appellant's arrest on Indictment No. 31823. (See App.Op.Br. p. 54.)

Appellee must bear heavy responsibility for inadvertently failing to correct the erroneous assertion. From this Court's Opinion, it is obvious that that fact was essential to the Court's result. At page 4, the Court said,

'* * * The indictment upon which the warrant for his arrest was based concerned an alleged conspiracy that occurred more than a year previous. In view of this a search of Vanella's entire residence had no apparent rational connection to the alleged conspiracy for which Vanella was indicted and arrested. Such a search therefore cannot be justified as a search incident to an arrest on the charge in the indictment. * * *'

Yet the Clerk's Transcript, pages 30 through 33, demonstrates that the assertion is incorrect. In actuality, the indictment charged that the conspiracy in which appellant Vanella was named as a defendant commenced on January 1, 1962, *but continued* to the date of the indictment which was February 14, 1963. February 14, 1963 was the date that appellant Vanella was arrested by Federal agents. [R.T. 27.] The overt acts charged in Indictment No. 31823 cover a period of over eleven months. The last one specified took place on February 5, 1962. [C.T. 30–33.]

With this correction of the record, it is respectfully submitted that United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), should control this case.

> Respectfully submitted,
> MANUEL L. REAL
> United States Attorney,
> JOHN K. VAN DE KAMP
> Assistant United States Attorney,
> Chief, Criminal Division,
> J. BRIN SCHULMAN
> Assistant United States Attorney,
> Assistant Chief, Criminal Division,
> BENJAMIN S. FARBER
> Assistant United States Attorney,
> Attorneys for Appellee,
> United States of America"

[Footnotes omitted]

government counsel contended that the rehearing petition applied to Sullivan, also. There is nothing in the petition to indicate that Sullivan was included therein. The petition does not mention Sullivan nor set forth any reason why the reversal of Sullivan's conviction should be set aside. Therefore, since the judgment as to Sullivan is not before us on rehearing, the ruling as to him is the law of the case. Cosgrove v. United States, 224 F.2d 157 (9th Cir. 1955) (rehearing).

Thereafter, Judges Chambers, Orr and Hamley directed a request to appellee which stated in part as follows:

"The Government is requested to file within fifteen days a memorandum brief in the above entitled case discussing the following point in light of the facts as set out below:

"On the basis of indictment No. 31823 could the arresting officers at the time of Vanella's arrest have had reason to believe that implements or fruits of the crime for which the arrest was made were on the premises under the control of the defendant? That is, was there a rational connection between the search and the crime for which defendant was arrested?"

In response to the above request, appellee and appellant each filed a memorandum. Thereafter, and prior to the time that any order had been made, either granting or denying the rehearing, Judge William E. Orr died. In order to fill the panel to pass upon the petition for rehearing, Chief Judge Chambers directed that the name of one of the remaining judges of the United States Court of Appeals for the Ninth Circuit be drawn by lot and such judge be assigned to serve with Chief Judge Chambers and Judge Hamley to pass upon and determine the petition for rehearing and to take such further action in the case as may be necessary. The writer of this opinion was chosen by lot and the present panel then, after having reconsidered the briefs then on file, made an order on the 10th day of December, 1965, granting the rehearing. The case was then set on the calendar for reargument before the present panel.

Additional briefs were filed by the parties and the case was argued before this panel on August 1, 1966, whereupon the case was submitted for decision.

On rehearing it was established that the statement made in appellant's brief and not denied by appellee to the effect that "Vanella was arrested for an alleged crime which was committed almost a year earlier" was in error.

█ The record shows that in fact the indictment upon which the arrest was based charged Vanella with being in a conspiracy to violate the narcotic laws which conspiracy commenced on January 1, 1962, and continued to the date of the indictment's filing on February 14, 1963. A warrant for Vanella's arrest was issued also on February 14, 1963, and Vanella was actually arrested about 9 p. m. of the same day. It thus appears now that the court was in error when the court stated in its opinion: "The indictment upon which the warrant for his (Vanella's) arrest was based concerned an alleged conspiracy that occurred more than a year previous." Inasmuch as the conspiracy to violate the narcotic laws was alleged in the indictment to have existed up to the day of the filing of said indictment and the day of Vanella's arrest, it now appears that there was a rational connection between the search of Vanella's premises and the crime for which he was arrested, and such search was not unreasonable as an incident of his arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S. Ct. 1098, 91 L.Ed. 1399 (1947); Leahy v. United States, 272 F.2d 487 (9th Cir. 1960).

██ It was not unreasonable for the officers pursuant to a valid arrest to search Vanella's house looking for the fruits and instrumentalities of an illicit marihuana trade. The indictment not only charged Vanella with participating in a current conspiracy to violate 21 U.S.C. § 176a, but also charged other members of the conspiracy with committing overt acts in furtherance of the conspiracy. The fact that Vanella was not

charged with having committed any overt acts involving possession of the fruits or instrumentalities of the conspiracy does not preclude a reasonable belief that Vanella could possess such items in his household. The search and seizure here was made specifically to discover and obtain marihuana, and was not a general exploratory search and seizure for papers and other items which are unoffending in themselves but could be used as evidence for conviction. This latter type of general exploratory search was held to be unreasonable in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932) and in Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931). See United States v. Rabinowitz, supra, 339 U.S. at 62–63, 70 S.Ct. 430. The former type of search was sanctioned in *Rabinowitz* and *Harris*.

■■ The original opinion held that the search of Sullivan was illegal and the finding of marihuana on him could not be used as a justification for searching Vanella's house. As previously noted that holding is binding on this rehearing. However, we hold that the search of the house was reasonable and justifiable on the grounds discussed above which are wholly independent of the Sullivan search. The illegal search of Sullivan does not vitiate an otherwise lawful search.

In view of the reliance in the original opinion on the erroneous statement of fact in appellant's brief as to the date of the conspiracy, it was not necessary for the original opinion to reach or pass upon the further contention made by appellant, to-wit, that the arrest of Vanella and the subsequent search of his home "was vitiated by the forceful entry of Agent Greppin and Officer Falbaum since they failed to state their authority and purpose as required by law, nor had they expressly demanded and been refused entrance." We will now give our attention to this point.

The record shows that when Agents Greppin and Falbaum went to Vanella's residence they first ascertained through a window that Vanella was present in the house. Falbaum stationed himself at a corner of the building near the rear of the house from which he could observe both the front and rear doors. Greppin went to the front door and knocked on the door. After a short time a window on the side of the house opened and a woman later identified as Mrs. Vanella stated, "Who is it?" Greppin answered that he was Neil Greppin, and when the woman asked, "Who do you want?" he stated, "I want to see Ralph; I am from U. S. Customs." The woman then shut the window and Greppin stood there for a couple of minutes. The next thing that Greppin heard was Agent Falbaum calling out, "They are getting out the back." Agent Greppin testified "At that time I felt that it was better that I enter the front door. If I went to the back and assisted him, they might have retreated and gone back into the house and exited out the front door. This happened. So that's why the act of forcing the front door took place."

Agent Falbaum testified to what he saw and did from his vantage point at the corner of the house. He stated that he saw Greppin go up to the front door and he appeared to be talking to someone at a window. Thereafter he saw Vanella come out the back door and go down the steps. Falbaum called out, "Ralph," and Vanella say, "Yes?" Falbaum started to walk toward Vanella and said, "I would like to talk to you." Immediately Vanella turned and ran up the steps as fast as he could. Falbaum, who had been some fifteen or twenty feet from him, ran after him and entered the back door, which was ajar, about a step or two behind Vanella. Vanella ran into Sullivan who was heading for the back door. After Falbaum was in the house, or simultaneously with his entering the house, he heard a noise at the front door which evidently was Agent Greppin forcing the front door. Vanella was then placed under arrest. Falbaum estimated that it was not much longer than five seconds from the time he saw Vanella on the steps until Falbaum went into the house.

■ Appellant contends that under the above facts the arrest was not valid because the entry was not made according to law. We disagree. 18 U.S.C. § 3109 provides:

§ 3109. Breaking doors or windows for entry or exit

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

These provisions also apply to an arrest with or without a warrant. Miller v. United States, 357 U.S. 301, 309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Under the circumstances of an arrest by a federal officer for a federal offense this court has applied the criteria of section 3109 to determine the lawfulness of entry before an arrest. Ng Pui Yu v. United States, 352 F.2d 626 (9th Cir. 1965); McClure v. United States, 332 F.2d 19 (9th Cir. 1964).

■ While the district court held that both entries were lawful under the circumstances, it is not necessary to rely on Greppin's entry through the front door to validate Vanella's arrest. It is sufficient if Falbaum's entry was lawful. Because, according to the testimony of the agents, Falbaum's entry was made either before or simultaneously with Greppin's entry through the front, Vanella can not complain that his right to be secure in his home has been violated so long as the first or one of the contemporaneous entries was lawful. Cf. Cognetta v. United States, 313 F.2d 870 (9th Cir. 1963); United States v. Viale, 312 F.2d 595 (2d Cir. 1963).

■ The district court pointed out that Falbaum entered an open door in hot pursuit of Vanella when the latter, having gone out the back way "trying to escape," suddenly turned and ran back up the steps into the house upon seeing and being spoken to by Falbaum. There was no breaking of the back door. It was ajar. In Ng Pui Yu v. United States, supra, this court had occasion to consider the validity of an entry to make an arrest where the entry was made through an open door without the prior announcement indicated in section 3109. We there held that there was no "breaking" and "that appellant's consent to the entry was not required and the entry made through the open door was not made in violation of 18 U.S.C. § 3109." 352 F.2d at 632. Other circuits are in accord with this holding. See United States v. Conti, 361 F.2d 153 (2d Cir. 1966); United States v. Williams, 351 F.2d 475 (6th Cir. 1965).[2] We likewise hold here that Falbaum's entry into the house was proper and the arrest of Vanella immediately thereafter was valid.

This panel having thus held that the arrest of Vanella was valid and that the search of his premises after his arrest was a proper incident of his arrest and had a rational connection therewith,

It is ordered that so much of the opinion of this court dated April 20, 1965, which held that the search of the home of Vanella was unreasonable and in violation of the Fourth Amendment to the Constitution of the United States and that the narcotics found therein and which were the basis of the charges against Vanella should not have been received in evidence, be and the same is set aside.

■ The charge in Count 1 of the indictment covered the marihuana that was

2. Two cases in the D.C. Circuit have indicated that entry through an open door for the purpose of arrest is not a lawful entry without consent or without being preceded by announcement. Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961); Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960). This circuit expressly refused to follow that line of cases in Ng Pui Yu, supra.

See also Dickey v. United States, 332 F. 2d 773 (9th Cir. 1964) (entry obtained through the use of a ruse was not unlawful); Leahy v. United States, 272 F.2d 487 (9th Cir. 1960) (same).

found on the person of Sullivan. Counts 2 and 3 referred to two separate packages of marihuana found in Vanella's house—one in his bathroom and one in his bedroom. The district court found Vanella guilty on all three counts and found Sullivan guilty on Count 1 and not guilty on Counts 2 and 3.

The judgment of conviction of Sullivan and Vanella on Count 1 remains reversed. The judgments of conviction against Vanella on Counts 2 and 3 are affirmed.[3]

HAMLEY, Circuit Judge (concurring).

While the back door was ajar, it was not open wide enough to enable Falbaum to enter without giving it a further push. Under these circumstances, I do not believe that the wide-open-door rule sanctioned by such cases as Ng Pui Yu v. United States, 9 Cir., 352 F.2d 626; United States v. Conti, 2 Cir., 361 F.2d 153; and United States v. Williams, 6 Cir., 351 F.2d 475, is applicable. In my opinion, therefore, Falbaum broke open an outer door within the meaning of 18 U.S.C. § 3109 (1964).

However, I think the facts related in the majority opinion establish exigent circumstances excusing Falbaum from giving the section 3109 notice before exercising the slight amount of force needed to push open the partly-open back door. Vanella's hurried exit out the back door gave Falbaum reasonable cause to believe that Vanella knew that an officer was at the front door to arrest him. Falbaum tried to stop Vanella to talk with him, the fair inference being that, if afforded the opportunity, he would have given Vanella further notice of what Vanella apparently already knew.

When Vanella, instead of stopping, turned around and ran back into the house, Falbaum was entitled to believe that Vanella was either seeking a means of escape through some other exit, or desired to destroy articles which, had Vanella been arrested, Falbaum would have been entitled to seize. Falbaum's entry through the partially open back door was thus in hot pursuit of a man who undoubtedly already knew his arrest was being sought. In my opinion, Falbaum was entitled to continue that pursuit by pushing open the door, without shouting notice of his authority and purpose to the rapidly receding figure of Vanella.

In all other respects I concur in the views expressed in the majority opinion.

---

3. The appellant also argued at the time of the original appeal that he should have been allowed to investigate the probable cause for the issuance of a warrant for his arrest, and that it was error for the court below not to allow him to view the minutes of the grand jury which returned the original indictment against him for that purpose. It is well settled that a defendant will not be allowed to challenge the inadequacy or incompetency of the evidence upon which a grand jury bases its indictment. So long as the indictment is valid on its face and the grand jury was legally constituted and unbiased. the defendant can not challenge the indictment's sufficiency. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), relied upon by appellant does not support his position, but rather it states that a defendant can not challenge the probable cause for arrest which is based upon a grand jury indictment, 357 U.S. at 487, 78 S.Ct. at 1250.