**UNITED STATES of America**

v.

**George W. WHITE.**

**Crim. No. 951–65.**

United States District Court District of Columbia.

Dec. 19, 1966.

H. Thomas Sisk, Washington, D. C., for defendant.

John A. Terry, Asst. U. S. Atty., for the Government.

### MEMORANDUM IN SUPPORT OF ORDER ENTERED DECEMBER 13, 1966

CORCORAN, District Judge.

The defendant George W. White is charged in Criminal No. 951–65 with violation of 22 D.C.C. 2401 (First Degree Murder) and 22 D.C.C. 3204 (Carrying Dangerous Weapon). He has moved to suppress certain evidence.

White was arrested May 2, 1965. The arrest was made by a Maryland State Trooper in the State of Maryland for a traffic violation. At the time White

was armed with a Colt revolver[1] and was accompanied by a passenger who charged that he had been shot by White in the District of Columbia and transported into Maryland. On the theory that an interstate kidnapping had occurred the F.B.I. entered the case. The passenger died a few days later and White was then charged with first degree murder and carrying a dangerous weapon.

In the course of the investigation it was learned that the defendant White was employed by one Carlton D. O'Neal, a professional photographer/painter, whose principal place of business was located in Norfolk, Virginia. O'Neal also conducted a business in Washington, D. C. and in connection therewith he leased premises at 1722 Connecticut Avenue to which White had access.

The F.B.I. requested O'Neal to come to Washington, D. C. On arrival O'Neal, informed of his constitutional right against search and seizure, signed a written waiver and willingly admitted F.B.I. agents into the premises at 1722 Connecticut Avenue with full permission to make such searches and remove such articles as they desired. O'Neal described his own attitude as fully cooperative with the F.B.I. and his permission as freely given. His waiver was signed and the search was conducted May 4, 1965.

O'Neal described the premises at 1722 Connecticut Avenue and White's relationship thereto substantially as follows. The premises are an apartment-type suite consisting of a front or reception room where O'Neal did his painting and displayed his work; a second room where photographic paraphernalia was employed and kept; a third room in which there was a hide-away couch and other bedroom furniture; and a bathroom which doubled as a darkroom. O'Neal testified that he came to Washington on the average of two days a week and that on such occasions he would use the premises as indicated above and as sleeping quarters. He also testified that he had given permission to White, if White visited Washington, to use the premises as sleeping quarters. He had given White a key. This permission to use the premises was not considered by O'Neal as part of White's remuneration—it was merely the extension of a favor to White to save White unnecessary expense while in Washington. So far as O'Neal was aware, White had taken advantage of this privilege no more than twice during the course of his employment which dated only from mid-April. White contributed nothing to the rent.

F.B.I. Special Agent Erkshell T. Zinn, who participated in the search, testified and described the general layout and character of the premises substantially as described above by O'Neal. He further testified that stains, apparently blood stains, were observed. He noted the presence of liquor bottles and drinking glasses. He observed coins scattered on the floor. He observed papers which apparently belonged to the deceased. He observed bullets in full view on the top of an open satchel. Photographs were taken, and certain items seized and removed from the premises. Tests were made. On cross-examination the agent acknowledged that the F.B.I. knew at the time of the search that White had permission of O'Neal to use the premises.

The defendant has moved to suppress (1) all items taken from the premises at 1722 Connecticut Avenue; (2) any reports or analyses conducted on the items referred to in (1); and (3) all observa-

---

1. The defendant moved to suppress this gun. The Court ruled orally that it was seized incidental to lawful arrest and denied the motion. The defendant also moved to suppress statements allegedly made by the defendant. On the representation of the Assistant U. S. Attorney that no such statements would be prof-fered at trial, no consideration was given to their admissibility. What is before the Court now is the validity of the seizure of certain articles from 1722 Connecticut Avenue under the circumstances set forth in the main body of this memorandum.

tions made by members of the F.B.I. or the Metropolitan Police inside the premises 1722 Connecticut Avenue.

The defendant did not testify in the preliminary hearing and there was no effort made on his behalf to assert claim of title to any of the articles seized or observed. Defendant's counsel when questioned as to which items, if any, were claimed to be owned by the defendant surmised that a business card and cellophane holder bearing the name George W. White must have belonged to the defendant. Otherwise he was unable to ascribe ownership to any of the articles in question.

The defendant claims that the items taken and tests and observations made were taken or made in violation of the Fourth Amendment ban against unreasonable searches and seizures. Specifically, he contends that the searching officers had no warrant, that the search and seizure was not validated by O'Neal's consent, and that the items seized and the observation and tests made constituted mere evidence and as such must be suppressed.

\* \* \* \* \* \*

A. Although the defendant as a gratuitous guest had relatively little interest in the premises it does seem that he has so-called "standing" to seek suppression of evidence taken from the premises under Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The defendant argues that this "standing" is also sufficient to invalidate the consent given by O'Neal, again placing his reliance on *Jones,* supra. The Court rejects this theory as an unwarranted extension of *Jones.*

That case eliminated hyper-technical distinctions for purposes of "standing"; it did not establish the rule that one with "standing" can without more invalidate the consent willingly given by another who also has "standing." United States v. Eldridge, 302 F.2d 463 (4th Cir. 1962).

United States v. Botsch, 364 F.2d 542 (2d Cir. 1966).

In *Eldridge* the Court (per Sobeloff, J.) held that a bailor of an automobile had "standing" to challenge the search and seizure of his automobile in the possession of the bailee but that the consent given the authorities by the bailee was valid and rendered the search and seizure valid. The Court noted:

"Lower federal courts have deemed searches reasonable if consented to by the person in lawful possession of the articles seized, or the premises on which they are found, as where the defendant's partner consented to a search, where an office manager in sole control of the office and the corporate records consented to the search and seizure, where the owner-occupant of a house consented to search of the living room in which the defendant customarily slept on a couch, where the wife of the defendant consented to a search of their home, and where an owner consented to a search of his garage and the article seized, which had been stored there by the defendant, was not packaged or otherwise concealed." [Citations omitted]

Here O'Neal had substantial rights—obviously greater rights than White. He was the lessee as well as the principal user and occupier of the premises. Clearly, he could give the authorities consent to enter and search his premises and the evidence disclosed as a result thereof could be used against the defendant. United States v. Sferas, 210 F.2d 69 (7th Cir. 1954); Stein v. United States, 166 F.2d 851 (9th Cir. 1948); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959); Woodard v. United States, 102 U.S.App.D.C. 393, 254 F.2d 312 (1958); United States v. Goodman, 190 F.Supp. 847 (N.D.Ill.1961).

The Court is well aware that there are situations where a party, even though he has some interest in the

premises, cannot validly consent to a search of the premises (or portions thereof) to the detriment of another. For example, where a third party consents to the search of areas *specifically set aside* for the use of the defendant or to the search of his *personal effects*, such consent has been held invalid. But, the situation presently before the Court involves neither consent to search areas exclusively used by or specifically set aside for the use of the defendant nor consent to enter and search his secured personal effects. Accordingly, the argument of the defendant and the authorities in support thereof are not applicable.[2]

B. The defendant then argues that even if the consent of O'Neal was valid, the motion to suppress should be granted because the items taken were "merely evidentiary" and therefore not subject to seizure.

Assuming for sake of argument that all the items challenged are "merely evidentiary" the Court must still deny the defendant's motion.[3]

▮▮ True, a warrant may not issue for the seizure of objects which are merely evidentiary (Fed.R.Crim. P. 41(b)) and several leading cases have invalidated the search for and seizure of merely evidentiary materials whether with or without a warrant.

Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Gouled v. United States, 255 U.S. 298, 41 S. Ct. 261, 65 L.Ed. 647 (1921); Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449 (1958); Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487 (1959). But it is not true as the defendant suggests that "merely evidentiary items", by their very nature, must be suppressed irrespective of the circumstances under which they came into the possession of the investigating authorities. To the contrary, under certain circumstances mere evidence may be seized. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L. Ed.2d 668 (1959); Morrison v. United States, 262 F.2d 449, 451 n. 6 (1958); see also Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945).

▮ Those cases which have held the seizure of merely evidentiary materials invalid reflect a blend of property concepts and Fifth Amendment principles. Usually the property seized for merely evidentiary purposes belongs to the defendant and is within the scope of the protection of the Fifth

2. In United States v. Blok, 88 U.S.App. D.C. 326, 188 F.2d 1019 (1951) the defendant's superior consented to search of desk which defendant had "exclusive right to use"; in Cunningham v. Heinze, 352 F.2d 1 (9th Cir. 1965) a landlady allowed police to search defendant's "room, closet, and effects"; in Reeves v. Warden, 346 F.2d 915 (4th Cir. 1965) the defendant's parents consented to the search of defendant's room and bureau and his locked accordion case found in attic; in Holzhey v. United States, 223 F.2d 823 (5th Cir. 1955) the officers searched "appellant's locked personal effects."

3. For present purposes it is not necessary to determine whether the challenged items are in fact "merely evidentiary materials" or are fruits or instrumentalities of the crime. Several of the items might well fall into the latter categories, e. g., bullets, bloodstained articles, papers of the deceased.

It has been observed that under the *Gouled* rule:

"*Gouled* promulgated a rule as simple to enforce as it is simple to understand: The government may, consistent with the fourth amendment, search for and seize property, even for purely evidentiary purposes if it can assert some *other* interest in that property recognized by law; the government is constitutionally prohibited from searching for and seizing defendant's property, for whatever reason, if there is no possessory right which it can assert either on its on behalf or on behalf of the complainant." Note, Evidentiary Searches: The Rule and the Reason, 54 Geo.L.J. 593, 606 (1966).

Amendment. It is, however, clear that suppression is not required merely because a defendant has some interest in the property taken and that such property may be incriminating. This duality of concepts was dealt with in the recent case of Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826 (1966), in which the authorities compelled petitioner to submit to the withdrawal and chemical analysis of his blood so as to *disclose evidence* that might be used against him at his trial for driving under the influence of alcohol. The blood analysis was admitted in evidence at his trial and a conviction resulted. The Supreme Court affirmed the conviction and rejected Schmerber's constitutional claims that he was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. In so holding the Court reaffirmed the distinction between "testimony or communication" and "real or physical evidence" stating that compulsion which makes an accused the source of "real or physical evidence does not violate [the Fifth Amendment]."

The cases relied on by the defendant must be limited to their facts. Usually what was involved was the compulsory production of a man's private papers for purely evidentiary purposes, e. g., *Boyd,* supra, *Gouled,* supra., or the seizure of mere evidence by the authorities who were unlawfully on the premises, e. g., *Morrison,* supra, *Williams,* supra.

The heavy reliance of the defendant upon *Morrison,* supra, is without merit. The *Morrison* Court, holding that a semen-soaked handkerchief could not be seized, based its ruling on a finding that the officers invaded the premises *without authority.* The Court specifically emphasized this by stating:

> "The case before us is precisely a case in which law enforcement officers invaded a private dwelling *without authority* and seized evidence of crime." [Emphasis supplied] [4]

If mere evidence was per se entitled to suppression, the factor of unlawful invasion would be irrelevant. If anything, this case supports the position that the circumstances of the taking must always be considered.

■ ■ The Court holds that the prohibitions of the Fourth and Fifth Amendments are not applicable *to the* facts of this case. True, evidence will be suppressed when it is obtained as a result of an unreasonable search or seizure. But in the instant case the items taken were not obtained by an unreasonable search and seizure. None of the items were obtained as the result of testimonial compulsion upon or enforced communication by the accused; none were obtained by a forcible or involuntary dispossession from the owner; none were obtained as the result of a compulsory production of the defendant's private papers; none were obtained by an unlawful invasion of the premises nor by the invasion of the

**4.** 262 F.2d at 454, 455. While Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) may be more properly a contraband type of case, the *Morrison* Court placed great weight on the following excerpt:

> "This is *not* a case in which law enforcement officials have invaded a private dwelling *without authority* and seized evidence of crime." [Emphasis supplied] 331 U.S. at 153, 67 S.Ct. at 1102.

In *Harris,* federal agents arrested the accused in the living room of an apartment which was in his exclusive possession. Without a warrant they carried on an extensive five hour search. Underneath some clothes in a bureau drawer in the bedroom they discovered a sealed envelope marked "personal papers." In the envelope they found several draft cards which were property of the United States and the possession of which was a crime. The defendant was convicted on this evidence. The Supreme Court affirmed adding that the evidence was not obtained in violation of the Fourth or Fifth Amendments.

secured personal belongings of the defendant.[5]

 Under all the circumstances of this case the Court concludes: that the law enforcement authorities acted lawfully and reasonably in all respects; and that none of the items challenged by the defendant were the product of an unreasonable search or seizure [6] in violation of the defendant's rights.

---

5. In those cases invalidating the seizure of "mere evidence" at least one or more of these factors was present.

6. While not necessary to the disposition of the issue before the Court, it should be noted that a strong argument can be made that neither a search nor seizure within the meaning of the Fourth Amendment is present here. A "seizure connotes a forcible dispossession from the owner." Caldwell v. United States, 338 F.2d 385, 388 (8 Cir. 1964). It is well established that objects in plain view which are taken by authorities lawfully on the premises are not products of a search. See, Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966); Petteway v. United States, 261 F.2d 53 (4th Cir. 1958); United States v. Lee, 308 F.2d 715 (5th Cir. 1962), cert. denied 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717. The rule might be otherwise only if the entry was unlawful. See, Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487 (1959).