UNITED STATES of America, Plaintiff,

v.

James **FERNANDEZ** and Ann Fernandez, Defendants.

No. CR–71–406 WHO.

United States District Court,
N. D. California.

Dec. 20, 1976.

James L. Browning, U. S. Atty., Robert J. Breakstone, Sp. Atty., San Francisco, Cal., for plaintiff.

Paul Alvarado, San Francisco, Cal., for James Fernandez.

Earl Partington, Oakland, Cal., c/o Paul Alvarado, San Francisco, Cal., for Ann Fernandez.

## OPINION

ORRICK, District Judge.

Defendants, James and Ann Fernandez, husband and wife, were indicted for conspiracy to import and distribute heroin in violation of 21 U.S.C. §§ 173, 174. In addition, defendant James Fernandez was separately charged under 18 U.S.C. § 1952 with traveling between California and Mexico, and performing other acts, in order to facilitate unlawful narcotics activity. On February 27, 1971, federal agents searched a residence at 1167 C Street, Hayward, California, and seized, *inter alia*, several pounds of heroin. Defendants now move for suppression of that heroin along with other evidence seized essentially on the ground that the search was conducted in violation of the "knock and notice" requirements of 18 U.S.C. § 3109. For the reasons hereinafter stated, the motion is denied.

### I.

Preliminarily, the government contends that defendants lack standing to object to the C Street search. Having considered the affidavits submitted and the evidence adduced at the hearing, the Court finds the facts in this regard to be as follows:

### A.

In February, 1971, George T. Lucas, the owner of 1167 C Street, Hayward, California, rented that residence to Dolores Fernandez, the mother of James Fernandez, in exchange for a deposit plus one month's rent in cash. At the time of the search on February 27, 1971, Dolores Fernandez had been actually living at C Street for approxi-

mately four days; after the search, Lucas gave Dolores Fernandez thirty days' notice to vacate. Only Dolores Fernandez did business with Lucas respecting rental of the residence—she paid the rent, she signed the lease, and the utilities were in her name. Lucas never saw either James or Ann Fernandez. However, due to a protracted illness (of which Dolores Fernandez is currently dying), James and Ann had been helping Dolores financially for several years prior to February, 1971. Specifically, immediately before moving to the C Street address in Hayward, Dolores Fernandez lived on 28th Street in Oakland, California, where she paid approximately $160 per month rent. During this time James and Ann steadily gave Dolores about $80 per month from their pay checks with the understanding that this money would be used toward payment of rent. These $80-per-month contributions continued after Dolores Fernandez moved from 28th Street in Oakland to C Street in Hayward, and continued after she vacated C Street pursuant to Lucas' notice. Thus, James and Ann effectively contributed a substantial amount of money toward the deposit and rental paid by Dolores Fernandez to Lucas for the C Street residence.

In addition, James visited his mother every day while she lived at 28th Street, Oakland, and stayed there overnight at least twice a month. During the four days Dolores Fernandez lived at C Street (prior to the search), James visited her twice. James also kept a change of clothes at C Street along with some cooking utensils. Finally, James and Ann had physical access to C Street and were free to come and go.

### B.

In order to maintain standing to object to an unconstitutional search and seizure, that is, in order to qualify as a "person aggrieved" under Rule 41(e) of the Federal Rules of Criminal Procedure, a de-fendant must (1) have a substantial proprietary or possessory interest in the thing seized, or (2) have a substantial proprietary or possessory interest in the premises searched,[1] or (3) be legitimately present on the premises searched. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Smith,* 495 F.2d 668 (10th Cir. 1974). Thus, in general, a defendant satisfies the standing requirement if he has an adequate interest in the place or object searched to give rise to a reasonable expectation of privacy. *United States v. Hunt,* 505 F.2d 931 (5th Cir. 1974), cert. denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); *see also, Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

There are numerous cases conferring standing upon a defendant who had authorized *access* to the premises searched, even though such defendant had absolutely no proprietary interest in the premises and was not present there when the search occurred. *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *Spinelli v. United States,* 382 F.2d 871 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Miguel,* 340 F.2d 812 (2d Cir. 1965), cert. denied, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965); *United States v. White,* 268 F.Supp. 998 (D.D.C.1966).

Thus, in *White,* standing was conferred upon a defendant who had received permission from the lessee to use the premises searched as sleeping quarters, even though defendant had so used the premises no more than twice, was not present there during the search, and had contributed nothing toward rent. Similarly, in *Miguel,* standing

---

1. Although the nature of proprietary or possessory interest necessary for standing has not been precisely delineated, this nature has been described as "substantial" (*Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)) or "cognizable" (*United States v. Hunt,* 505 F.2d 931, 938 (5th Cir. 1974), cert. denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975)).

was conferred upon a defendant who did not own the apartment searched but who was allowed to stay there from time to time and to keep clothes there. More generally:

> " * * * it is the *right* to use the premises that is a factor determinative of standing. If the defendant is legally occupying, or has been granted a right to occupy the premises, even though he is not physically present at the time of the search, then his privacy has been invaded by a search of these premises." *Spinelli v. United States, supra,* 382 F.2d at 879.

█ In the instant case, defendants had authorized access to the premises searched (1167 C Street), were free to come and go, kept clothes and cooking utensils there, and visited relatively frequently. Additionally, defendants made substantial contributions to the rent of the premises. Although these rather informal contributions *might* not have amounted to a legally cognizable property interest in 1167 C Street, these contributions along with defendants' legitimate access to, frequent visits to, and interest in possessions kept at 1167 C Street gave rise to a reasonable expectation of privacy, on defendants' part, in the premises searched.[2]

Nor does the mere fact that defendants *shared* access to and interest in 1167 C Street with Dolores Fernandez defeat or debilitate their aggrieved status for the purposes of Rule 41(e) of the Federal Rules of Criminal Procedure. *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *United States v. Canada,* 527 F.2d 1374 (9th Cir. 1975).

Therefore, defendants have standing to move for suppression in this case.

**2.** In *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960), the Supreme Court ruled that in order to qualify for standing "one must have been a victim of a search or seizure, one against whom the search was directed". *See also, United States v. Mulligan,* 488 F.2d 732 (9th Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974).

Here, the affidavit of Agent Beretta supplied probable cause for the issuance of a warrant to search 1167 C Street. This affidavit indicated

## II.

Defendants' suppression claim is based on alleged violation of the "knock and notice" obligations imposed by 18 U.S.C. § 3109. Having considered the affidavits submitted and the evidence adduced at hearing, the Court finds the facts in this regard to be as follows:

### A.

On February 27, 1971, at about 9:30 p. m., seven federal agents approached (with a search warrant) the two-bedroom, white stucco residence of Dolores Fernandez located at 1167 C Street, Hayward, California; two agents went to the rear entrance of the residence, and five went to the front entrance. At the front entrance, Agent Varenhorst positioned himself on the doorstep, while Agent Berta stood directly behind him, and the three others, including a police matron, stood behind Agent Berta. Agent Varenhorst knocked loudly, and Dolores Fernandez opened the front door. Then, Agent Varenhorst identified himself and announced his purpose. Fernandez responded in Spanish that she did not speak English. Agent Berta then said in Spanish, "We are the police". Fernandez said, in Spanish, "What?", and Agent Berta responded, again in Spanish, "Federal Narcotics Agents". At this point Fernandez started to shut the door, and Agent Berta said, in Spanish, "Open the door". Agent Varenhorst then opened the screen door (which had remained closed throughout the exchange), and the five agents entered the residence. Agent Berta testified that Dolores Fernandez was subsequently read her rights under *Miranda v. Arizona,* 384 U.S.

that C Street had been under surveillance and described visits of Ann Fernandez to C Street which strongly supported probable cause to believe that narcotics were being stored there. Thus, since probable cause was largely *based* on the access and relationship which *James and Ann* Fernandez had to 1167 C Street, it is clear that the search of that residence was *directed,* at least in part, against defendants. In sum, there are additional reasons for conferring standing in this case.

436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that her reactions and responses indicated that she did in fact speak and understand English.

In the meantime, Special Agent McCravy, along with one other federal agent, had approached the rear door of 1167 C Street with the intent to position himself so as to prevent escape and to enter *after* Agents Varenhorst and Berta had effected entrance through the front door. From his position at the rear door, Agent McCravy did not hear Agent Varenhorst's knock at the front door and could not see either the front entrance or the front room. Suddenly, Agent McCravy heard voices and quick foot movements originating from the front room. From the tone of the voices, some of which were male, and the noise made by the quick foot movements, Agent McCravy determined that Varenhorst and the other agents had entered through the front. At this point Agent McCravy knocked loudly on the rear door. After a few seconds passed without response, Agent McCravy broke a window in the rear door with the butt of his service revolver, reached in to unlatch the door, and then entered. When Agent McCravy reached the front room, Varenhorst and the other agents were already there. Agent McCravy testified that he knew, from surveillance of 1167 C Street, that Dolores Fernandez would be there at the time of the search; however, surveillance also indicated that others might be present as well since people had been seen coming and going from that residence at frequent intervals. This realization, along with the tone of voices and noise in the front room, led Agent McCravy to fear for the safety of his fellow agents, although McCravy admitted that he heard no cries for help. Thus, Agent McCravy felt it necessary to force entry through the rear at that time. In this regard, he testified that an officer's primary responsibility in executing a search warrant is to secure the premises for the safety of all, agents and residents included.

### B.

18 U.S.C. § 3109 imposes a general ban upon a federal officer's breaking into a habitation to execute a search warrant unless, "after notice of his authority and purpose", he is refused admittance.[3] *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1957); *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1967).

In the instant case there is no question that the front-door entrance of Agents Varenhorst and Berta complied fully with the requirements of Section 3109. It is undisputed that "notice of authority and purpose" was given by Agent Varenhorst. In addition, the front-door entry was not forced; to the extent this entry *may* have been something less than wholly consensual, however, Dolores Fernandez' act of starting to shut the door certainly constituted sufficient refusal of admittance to justify whatever slight force may have been utilized.

Thus, while it is clear that the front entry of 1167 C Street was lawful, defendants claim that the rear-door entry violated Section 3109 because forcible entry was made without announcement or refusal of admittance, and because forcible entry was unwarranted in that Agents Varenhorst and Berta were already safely inside.[4]

Generally, if the first or a contemporaneous entry is lawful under Section 3109, a defendant cannot complain of un-

---

**3.** 18 U.S.C. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

**4.** There is some factual dispute as to whether Agent McCravy's rear entry occurred before, after, or simultaneous with the front entry of Agents Varenhorst and Berta. Upon a review of the evidence, the Court has concluded that Agent McCravy's rear entry was subsequent; therefore, the Court need not address those of defendants' claims which are based on the allegation that the rear entry was prior or simultaneous.

lawfulness in other later entries. *Russo v. United States,* 391 F.2d 1004 (9th Cir. 1968), *cert. denied,* 393 U.S. 885, 89 S.Ct. 195, 21 L.Ed.2d 161 (1968). In other words, the prior lawful entry and continued presence of one undercover agent on the premises vitiates any impropriety of subsequent entries by other officers since protection of privacy is the primary aim of Section 3109. *United States v. Bradley,* 455 F.2d 1181 (1st Cir. 1972), *aff'd* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973).

Thus, in *Russo,* the Ninth Circuit held that a defendant who admitted an officer through the front door of his motel room when informed of the existence of a warrant for his arrest could not complain of the unlawfulness of a subsequent entry by another officer who, upon hearing voices in the room, used a pass key to enter through the rear door. Again, in *Cognetta v. United States,* 313 F.2d 870 (9th Cir. 1963), the Ninth Circuit held that Section 3109 was not violated where evidence supported the district court's finding that entrance through the front door by an officer who had warrants of arrest and who had announced his authority and purpose was prior to entrance through the rear door by an officer who did not announce his authority and purpose.

Finally, in *Vanella v. United States,* 371 F.2d 50 (9th Cir. 1966), *cert. denied,* 386 U.S. 920, 87 S.Ct. 883, 17 L.Ed.2d 790 (1967), the Ninth Circuit held that lawful entry by one customs agent through the back door of defendant's house before or contemporaneous with another agent's forced entry through the front door did not contravene Section 3109. The instant case falls squarely within the rulings of *Russo, Cognetta,* and *Vanella.*

■ More recently, in *United States v. Bustamante-Gamez,* 488 F.2d 4 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), the Ninth Circuit held that officers are not required under Section 3109 to announce at every place of entry; one proper announcement is sufficient. *Bustamante-Gamez* also indicates, however, that since Section 3109 is intended to protect property as well as privacy, there is a difference between mere failure to announce and failure to announce *plus* forcible entry—some more, specific exigencies may be necessary if entry may be obtained only by the physical destruction of property. The implication is, therefore, that although Agent McCravy was free to enter through the rear door without announcing (since Fernandez' privacy interest had been protected by Agent Varenhorst's prior, lawful entry), the fact that McCravy's entry was *forcible* must be justified by some showing that it was not "needlessly" or "unreasonably" so. Clearly, due to the property interest secured by Section 3109, prior lawful entries cannot legitimize gratuitously destructive subsequent entries. The requirement that use of force be reasonable is, of course, quite consistent with the Fourth Amendment's prohibition against "unreasonable searches and seizures".

■ In the instant case, however, Agent McCravy's breaking of the door window to gain entry was well within the bounds of reason and necessity. It has often been held, particularly in narcotics (destructible evidence) cases, that the sound of scuffling or quick foot movements justifies *forcible* entry under Section 3109 after agents have knocked and announced themselves. *Stamps v. United States,* 436 F.2d 1059 (9th Cir. 1971); *McClure v. United States,* 332 F.2d 19 (9th Cir. 1964), *cert. denied,* 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965); *United States v. Bethea,* 387 F.Supp. 969 (D.Conn.1975).

Certainly, if scuffling and quick foot movements can justify forcible entry to prevent destruction of evidence, those same sounds can justify forcible entry to secure the safety of federal agents and residents. Here, the tone of the voices and the sound of the quick footsteps in the front room, along with the fact that seconds passed without response after Agent McCravy knocked at the rear door, clearly support the reasonableness of his inference that the safety of those inside might be in jeopardy. Defendants make much of the fact that there was no cry for help from inside.

However, under these circumstances, the absence of such a cry does not defeat the existence of reasonable cause to fear for the safety of the other persons involved.

Also, under these circumstances, Agent McCravy was quite respectful of Fernandez' property interests—rather than break down the door, he shattered a window in the door and reached inside to unlatch it. When compared with the government's paramount interest in securing the safety of its agents and citizens, and with Agent McCravy's legitimate inference that this interest was threatened, his minimal destruction of property was reasonable beyond doubt. It is quite clear that Agent McCravy did no more than was absolutely necessary to secure the safety of the premises.

Therefore, the entry of 1167 C Street on February 27, 1971, by federal agents was, in all respects, lawful under 18 U.S.C. § 3109.

### III.

Defendants' final contention is that because the search and seizure subsequently conducted at 1167 C Street exceeded the scope of the warrant, the evidence legitimately gathered during that search must be suppressed.

The search warrant for 1167 C Street listed as seizable items:

> " * * * certain property, namely narcotics, specifically heroin, and narcotic paraphernalia, books, records, customer lists, and telephone records relating to the illegal importation, receipt, transportation, concealment, distribution and sale of narcotic drugs not in or from the original stamped package which are the fruits and instrumentalities of violations of Section 174, Title 21, U.S.C. and Sections 4704(a) and 7237(a) of Title 26, U.S.C."

Aside from several pounds of heroin and other legitimately seized evidence, federal agents also seized during their search of 1167 C Street approximately $27,000 in cash, food stamps, a telephone, checkbooks, and certain papers. The $27,000 has been levied upon by the Internal Revenue Service, and the government has either returned or consented to return the food stamps, telephone, checkbooks, and papers. Defendants now argue that because these items were seized but not listed as seizable in the warrant, and because the government has failed to prove that these items bore some relation to the crimes charged, the heroin and other *lawfully* seized evidence must be suppressed.

In this regard, defendants cite *United States v. Golay,* 502 F.2d 182 (8th Cir. 1974). However, *Golay* held that in order to introduce into evidence an item seized but not listed as seizable in the warrant, the government must prove either that the item is evidence of another crime committed in the searching officer's presence, or that the item is reasonably related to the crime for which the warrant issued. Nowhere does *Golay* make such proof a prerequisite to introduction into evidence of items legitimately seized because listed as seizable in the warrant.

To the contrary, the clear rule of law is that, in the ordinary case, the seizure of some items beyond those specified in a search warrant does not result in the suppression of those items which were validly seized. *United States v. Sisca,* 361 F.Supp. 735 (S.D.N.Y.1973), *aff'd* 503 F.2d 1337 (2d Cir. 1974), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. King,* 335 F.Supp. 523 (S.D.Cal.1971), *rev'd on other grounds,* 478 F.2d 494 (9th Cir. 1973), *cert. denied,* 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). In fact, if defendants wish to object to the introduction into evidence of the items particularly described and, therefore, legitimately seized, the burden is upon *defendants* to show that seizure of the undescribed items or other misconduct in the search rendered the entire search unreasonable. *United States v. Leta,* 332 F.Supp. 1357 (M.D.Pa.1971). Here, defendants have made no such showing. Although the seizure in this case of food stamps and a telephone *might* be said to bear no obvious relation to the crimes involved, considering the abundance of narcotics and other clearly related evidence taken from 1167 C

Street, the seizure of these undescribed items was certainly not so unreasonable as to vitiate the entire search.

In accordance with the foregoing Opinion, defendants' motion to suppress is hereby denied.