**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald CRAWFORD,**
**Defendant-Appellant.**

No. 80–1833.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 1, 1981.

Decided Sept. 28, 1981.

Rehearing Denied Dec. 4, 1981.

Michael R. Levine, Santa Monica, Cal., for defendant-appellant.

Nancy Wieben Stock, Asst. U. S. Atty., Los Angeles, Cal. (argued), for plaintiff-appellee; Mark E. Kalmansohn, Asst. U. S. Atty., Los Angeles, Cal., on brief.

---

\* Honorable William H. Orrick, United States District Judge for the Northern District of Cali-

Before TANG and ALARCON, Circuit Judges, and ORRICK,\* District Judge.

ORRICK, District Judge:

Appellant, Donald Crawford, was arrested pursuant to a federal arrest warrant, charging him with uttering and possessing counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472. Shortly after the arrest, state agents executing a state search warrant found $150,000 in counterfeit money and a photograph of Crawford surrounded by money. Crawford contended that his arrest was unlawful in its execution, because the agents violated the "knock and notice" requirements of 18 U.S.C. § 3109 and the agents violated the requirements of Rule 41 of the Federal Rules of Criminal Procedure in their execution of the state search warrant. The motion to suppress was denied and Crawford was found guilty after a jury trial. Crawford appeals the district court's ruling denying the motion to suppress. We hold that the district court's ruling was proper and affirm the conviction.

I

Appellant first contends that the forced entry, without notice of authority and purpose, at the inner bedroom, made the arrest unlawful, violating the obligations imposed by 18 U.S.C. § 3109.

A

On June 21, 1980, United States Secret Service Agent John Pavlick obtained a federal arrest warrant authorizing the arrest of Crawford at his place of residence. The arrest warrant was issued subsequent to a federal investigation and alleged violations of 18 U.S.C. § 472, possessing and uttering counterfeit Federal Reserve Notes. Be-

fornia, sitting by designation.

cause of Crawford's violent background, Agent Pavlick requested assistance from the Orange County Sheriff's Specialized Weapons Team in securing the premises and effecting the arrest. At 5:30 a. m., June 24, 1980, state officers under the direction of Agent Pavlick knocked on the front door of Crawford's residence and identified themselves and their purpose. When no response was forthcoming, the officers broke down the door and entered the house. A .22 caliber rifle was visible leaning against the stairwell. The officers without knocking and announcing their authority and purpose opened a bedroom door on the first floor, finding Crawford and a female in bed. Crawford was arrested.

## B

The threshold question is whether federal statute 18 U.S.C. § 3109 or California Penal Code §§ 844 and 1531 apply in determining the lawfulness of the arrest. The arrest warrant was obtained pursuant to Rule 4 of the Federal Rules of Criminal Procedure. Rule 4 makes no mention of the requirements for breaking and entering doors in the execution of arrest warrants. The only federal statute governing the breaking and entering of doors to serve a warrant is § 3109, which covers the execution of *search* warrants [1] and not the execution of *arrest* warrants.

█ The Supreme Court has stated that arrests by federal officers for federal offenses are to be governed by state law in the absence of a federal statute. *United States v. Di Re*, 332 U.S. 581, 589–90, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948). Relying on this statement, the Ninth Circuit has held that § 3109 applies to the execution, by federal officers for federal offenses, of arrest warrants as well as search warrants. *See Vanella v. United States*, 371 F.2d 50,

58 (9th Cir. 1966), *cert. denied*, 386 U.S. 920, 87 S.Ct. 883, 17 L.Ed.2d 790 (1967), *citing Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). In the instant case the arrest resulted from a federal arrest warrant, issued by a federal magistrate, at the culmination of a federal investigation. Since § 3109 is the applicable federal statute, we treat the problem as one of federal law.

Section 3109 authorizes a federal officer to break open "any outer or inner door" to execute a search warrant if, after notice of authority and purpose, entrance is refused. Unless these requirements are complied with, the federal officer is prohibited from breaking into a habitation to execute a warrant. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Miller v. United States, supra*. In the present case appellant does not contest, nor is there any question that the initial front door entry complied with the requirements of § 3109.

█ There are no decisions directly on point dealing with appellant's assertion that, after having complied with the dictates of § 3109 at the front door, the arresting officers were then required to comply with § 3109 at the inner bedroom door.[2] The Ninth Circuit has consistently held that where the first or contemporaneous entry is lawful under § 3109, a defendant cannot complain of the unlawfulness of subsequent entries. *Cognetta v. United States*, 313 F.2d 870 (9th Cir. 1963) (entrance through the front door after announcement of authority and purpose prior to an unannounced rear door entry); *Vanella v. United States, supra* (lawful entry through the rear door before or contemporaneous to a forced entry through the front door); *Russo v. United States*, 391 F.2d 1004 (9th Cir. 1968), *cert. denied*, 393 U.S. 885, 89 S.Ct.

---

1. Section 3109 provides that:

 "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a per-

son aiding him in the execution of the warrant."

2. While the officers did not use physical force in opening the bedroom door, the requirements of § 3109 apply to the opening of unlocked doors. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

195, 21 L.Ed.2d 161 (1968) (lawful front door entry contemporaneous with a forced entry through the rear door).

Most recently this principle was relied upon and clarified in *United States v. Bustamante-Gamez*, 488 F.2d 4 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). In *Bustamante-Gamez* the announcement of authority and purpose at the front door was simultaneous to the opening and entry of a garage door by another officer. The court stated:

> "In short, the most rational explanation of the *Cognetta* result is that officers are not required to announce at *every* place of entry; one proper announcement under section 3109 is sufficient. There may be instances in which the officers' choice of place to announce is so clearly unreasonable that a second announcement is required at the actual point of entry, but this is not such a case. Here, the announcement was given at the front door of the house, and in the vast majority of cases this will be reasonable." *Id.* at 10 (footnote omitted).

Appellant contends that a failure to enforce the notice requirement for the inner door in this case would contravene the purposes of § 3109 which include: reduction of the potential for violence; prevention of needless destruction of private property; and respect for individual privacy. *See Id.* at 9.

■ We conclude that these purposes were preserved. Appellant had adequate notice at the front door because that notice was loudly given with a proper interval of time observed before the breaking open of the door.[3] Additionally, there was no needless destruction of property since the bedroom door was not forced open in a physical sense.[4] In light of the sufficiency of the

notice provided at the front door, appellant's privacy interests were not infringed upon. Furthermore, appellant's privacy interests must be weighed against the state's interest in securing the safety of its agents and citizens. The reasonableness of dispensing with notice at the bedroom door is enhanced by the circumstances upon entry into the house and the known background of Crawford and a co-inhabitant.[5] The actions of the officers can be interpreted as an attempt to reduce the potential for violence.

While the aforementioned decisions deal with the lawfulness of exterior door entries contemporaneous or subsequent to lawful entries, the logic and holdings should extend to subsequent interior door entries. We hold that the announcement of authority and purpose at the front door, in the present case, was sufficient to meet the requirements of § 3109, vitiating any duty to repeat the notice at the inner bedroom door.

## II

Appellant's second contention is that Agent Pavlick deliberately violated the provisions of Rule 41 of the Federal Rules of Criminal Procedure, that compliance with Rule 41 is mandatory, and that the state search warrant did not comply with Rule 41.

## A

■ In the course of securing the house and effecting the arrest of Crawford, state agents lawfully observed: a revolver in Crawford's bedroom; several firearms, drug-related paraphernalia, suspected drugs and a single $50 bill in a co-inhabitant's

---

3. *See United States v. Woodring*, 444 F.2d 749 (9th Cir. 1971). Entry was permitted after waiting one minute; here the officers waited approximately one-and-one-half minutes.

4. *See United States v. Bustamante-Gamez*, 488 F.2d 4, 11 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

5. We do not hold that exigent circumstances existed excusing any required compliance with

§ 3109, since the issue was not specifically argued in the district court. However, the arresting officers were unfamiliar with the darkened interior of the house, the officers had been informed that Crawford was carrying a gun earlier in the day, and that Crawford and a co-inhabitant of the premises were members of a motorcycle gang, a member of which had recently been charged with the shooting of a police officer.

bedroom; and marijuana in another bedroom. Agent Pavlick and the state officers discussed the possibilities of procuring a search warrant. Agent Pavlick decided not to seek a federal search warrant based upon his belief that it was the United States Attorney's office policy not to authorize prosecution on the basis of one counterfeit note and that it was Secret Service policy not to obtain search warrants for drugs, guns, and stolen property. The state agents determined that probable cause existed and they, with Agent Pavlick in attendance, procured a state search warrant from a state municipal court judge. Agent Pavlick was not an affiant to the warrant nor did he participate in the discussions with the state municipal judge regarding the issuance of the warrant. A warrant was issued including authorization to search for counterfeit money and photographic negatives of money or plates of money.[6] During the execution of the search warrant Agent Pavlick entered the residence only after he was requested to do so in order to give expert advice as to the counterfeit nature of the $150,000 found in a suitcase. In addition to the suitcase, the state officers found a photograph of Crawford with a mound of currency on top of him. These two pieces of evidence were used in the federal prosecution of Crawford.

### B

The mere fact that evidence obtained by state officers, under a state warrant, based upon violations of state law, is used in a federal prosecution does not invoke the requirements of Rule 41. In such cases the standard is whether the warrant comports with the requirements of the Fourth Amendment. *United States v. Johnson*, 451 F.2d 1321 (4th Cir. 1971); *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972); *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975); *United States v. Millar*, 543 F.2d 1280 (10th Cir. 1976). Appellant does not contend that the execution of the search warrant failed to meet the state

standards nor that any Fourth Amendment rights were violated.

If, however, the search is federal in character then the legality of the search should be analyzed in light of federal constitutional requirements and those provisions of Rule 41 "designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *United States v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

While the federal involvement in the present case appears minimal on its face, relevant case law indicates that we should treat the search as federal in character. *Lustig v. United States*, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 1373–1374, 93 L.Ed. 1819 (1949) (a search is a search by a federal officer "if he had a hand in it"); *United States v. Sellers, supra*, 483 F.2d at 42 n.4 (federal search when one federal informant and federal officer participated in certain phases of the search); *United States v. Harrington*, 504 F.2d 130, 133 (7th Cir. 1974) (federal search when two federal officials were present during a state search; state proceedings were dismissed when the federal indictment was returned). Since appellant makes no constitutional objections to the issuance or execution of the search warrant, we turn to the claims concerning violations of the provisions of Rule 41.

Appellant points to three violations of Rule 41 that he argues require us to reverse the district court's denial of the motion to suppress. First, the state search warrant was not "directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States," but rather it was directed to any "sheriff, constable, marshal, policeman or any other peace officer" of Orange County. Second, Rule 41 requires the warrant to be executed "within a specified period of time not to exceed 10 days." The state search warrant was silent as to the

---

**6.** While the federal government has primary jurisdiction for prosecuting charges relating to counterfeiting, it is also a state crime. The federal statutes do not wholly occupy the field and the states have concurrent jurisdiction to prosecute. *California v. Zook*, 336 U.S. 725, 69 S.Ct. 841, 93 L.Ed. 1005 (1949); *In Re Dixon*, 41 Cal.2d 756, 264 P.2d 513 (1953).

duration of the warrant. Third, the warrant did not designate a federal magistrate for return, instead it designated the issuing state judge for return.

 If the warrant is a proper state warrant, then each and every requirement of Rule 41 is not necessary "even though federal officials participated in its procuration or execution." *United States v. Sellers, supra,* 483 F.2d at 43. In circumstances nearly identical to those in the present case, the Second Circuit determined that while the three provisions of Rule 41 that were not complied with were designed to "protect the integrity of the federal courts or to govern the conduct of federal officers,"[7] the defects were not sufficient to warrant exclusion of the evidence. *United States v. Burke, supra,* 517 F.2d at 386–87. In the instant case, while the warrant was not directed to a federal officer, one was present during its execution. The execution of the warrant was done on the same day as the warrant was issued, and its return was effected back to the issuing court.[8] Clearly the integrity of the federal courts has not been offended and the conduct of the federal officer was not out of line.

The fact that the integrity of the federal courts has not been offended and that the conduct of the federal official was not amiss does not end our analysis. If Rule 41 violations are not of constitutional magnitude, then "violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Id.* (footnotes omitted); *United States v. Radlick,* 581 F.2d 225 (9th Cir. 1978); *see also United States v. Sellers, supra.*

 Appellant has not produced evidence that suggests that he was prejudiced

by the failure to comply with the technical dictates of Rule 41 in the sense that the search might not have occurred or would not have been so abrasive had Rule 41 been followed. Just because Agent Pavlick concluded that he did not have enough evidence to seek a federal search warrant does not establish that probable cause was lacking. In fact, appellant has not contested the existence of probable cause. There is no indication that had Agent Pavlick sought a federal warrant from the state judge that the state judge would not have issued the warrant.

 Appellant claims that Agent Pavlick deliberately violated Rule 41 by making an agreement with the state agents that any evidence obtained in the search would be turned over to the federal government for use in a federal prosecution and that Agent Pavlick assisted the state agents in the execution of the search warrant.

Appellant cites *United States v. Searp,* 586 F.2d 1117, 1121 (6th Cir. 1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979), for the proposition that compliance with Rule 41 is required so as to insure that federal officers do not take advantage of more lenient state standards. While we share this concern, appellant's reliance on *Searp* is misplaced. The facts in *Searp* indicate far more federal involvement than is present in the instant case. Additionally, the level of federal participation was not used as a basis for reversing the convictions in *Searp.* Rather, the *Searp* court concluded, as does this court in the present case, that the level of federal participation required the search to be judged by federal standards. The court found that the violation of Rule 41 (execution of the warrant at night) did not require the invocation of the exclusionary rule and the convictions were affirmed. *Id.* at 1125.

The record indicates that Agent Pavlick's decision not to seek a federal warrant was

---

7. *But see United States v. Sturgeon,* 501 F.2d 1270 (8th Cir. 1974), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974), where the provision requiring designation of a federal magistrate to whom it shall be returned was held not to be designed to protect the

integrity of the federal courts or govern the conduct of federal officers.

8. Rule 41 permits state judges as well as federal magistrates to issue warrants.

made in good faith. The determination was based upon Agent Pavlick's sincere beliefs at the time of arrest. Furthermore, there is nothing in the record to substantiate appellant's contention that Agent Pavlick either expressly or tacitly agreed with state officers that evidence obtained in the search would be turned over for use in a federal prosecution. In fact, Agent Pavlick expressly denied any such agreement or motivation on his part. We find that appellant's assertion that Agent Pavlick deliberately circumvented the requirements of Rule 41 in order to take advantage of more lenient state requirements is without merit.

Were we to invoke the exclusionary rule due to Agent Pavlick's participation in the execution of the state search warrant, absent any demonstration of bad faith on his part, we would preclude cooperation between state and federal law enforcement officials, placing "officials acting jointly on the horns of a dilemma in deciding whether to charge a state or federal crime." *United States v. Sellers, supra,* 483 F.2d at 44.

We hold that any technical violations of Rule 41 under the facts of this case do not require the use of the exclusionary rule. The decision of the district court is

AFFIRMED.