UNITED STATES of America, Plaintiff,

v.

Martin Allen JOHNSON, Defendant.

No. CR 86–108–PA.

United States District Court,
D. Oregon.

Sept. 11, 1986.

Charles H. Turner, U.S. Atty., William W. Youngman, Asst. U.S. Atty., Portland, Or., for plaintiff United States.

Charles P. Denkers, Portland, Or., for defendant Martin Allen Johnson.

PANNER, Chief Judge.

Defendant moves to suppress evidence. The motion is denied.

On August 14, 1986, a jury found defendant Martin Allen Johnson guilty of: (1) possession of cocaine with intent to distribute, in an amount exceeding 100 grams; (2) possession of marijuana with intent to distribute; and (3) ex-felon in possession of firearms.

Before the trial, Johnson moved to suppress evidence seized and statements made during a search of his residence. I granted the motion as to his statements, but reserved ruling as to the evidence until Johnson could establish standing in the areas where the evidence was found. After Johnson established a recognizable privacy interest in these areas, I denied the motion to suppress evidence. This opinion supplements my oral ruling.

## FACTS

On April 8, 1986, Detective Lynn Courtney of the Portland Police Bureau filed an affidavit in Multnomah County Circuit Court, requesting that a warrant issue for certain rooms in an apartment building on the northwest corner of Southeast Eighteenth Avenue and Morrison Street in Portland. Courtney's affidavit states that a reliable informant had told him that two residents of the building, "Doug" and "Marty," were dealing cocaine.

The informant's description of Marty accurately described the defendant. The informant stated that he had seen Marty in possession of a pound of cocaine at least three times in the last week. The informant also tied the cocaine to two areas of the apartment building—Marty's second floor apartment and a "locked room off the first floor laundry room area." The informant twice saw Marty bring cocaine from the first floor area, where he stored it, to his second floor apartment.

Several corroborating details are included in the affidavit. It states that the informant took Courtney to the building, where Courtney observed that the physical details were as the informant had stated. The informant also said that Marty drove a green pickup truck, and gave the license number. The police traced this number and found the truck was registered to Martin Johnson and another person, though at another address. The informant also said that Marty used the name Paul Martin, and that he was the building's apartment manager and its only full-time resident. A police check with the local electric utility showed that Paul Martin was listed both as the utility's subscriber and as the apartment manager for the building.

The affidavit also notes another source of corroboration. In January 1986, a few months before the events here, the Portland police received two anonymous complaints that a "Marty" dealt cocaine from the building. One caller adequately described the defendant. The other stated

that cocaine parties were being held in the building.

Courtney presented the affidavit to a Multnomah County Circuit Court Judge, who issued a warrant for the locked storage area on the first floor, as well as Doug's second floor apartment, unit nine, and Marty's second floor apartment. Because Marty's apartment and the downstairs area were unnumbered, both the affidavit and the warrant gave a detailed description of how to reach these areas. For example, the warrant authorizes a search of "an unknown apartment number being located on the SE corner of the upstairs units; access to this apartment is gained by proceeding south in the hallway from Unit # 9 through a windowed wood door where immediately passing through this door you see a solid metal blue colored door immediately on the left; you pass through this door into a small open area where is located a red door on the eastside of the open areas; that red door has no markings or numbers attached to or around it...." The warrant also authorizes a search of a "locked storage area on the ground floor off the laundry room; access to this area is gained through a stairway leading down to the first floor from the upstairs hallway next to the non-numbered, red, wood and metal door...."

These descriptions were made necessary by the absence of room numbers, as well as by the building's irregular floor plan. Officers described the building as a maze or labyrinth, particularly the first floor. Rooms were not numbered consecutively, and several were unnumbered. Hallways were not straight, and had many corners and angles.[1]

The warrant issued April 9, 1986, and the police executed it that same morning. They entered the main entrance to the second floor and proceeded upstairs. Because the blue metal door leading towards Marty's apartment was ajar, they proceeded unimpeded to the red door that gave direct access to the apartment.

Detective Jensen knocked on the door and announced that they were police officers. Immediately after that, Detective Neuenschwander began to force the door with a pry bar. He used a bar rather than a ram because the door opened outward. This, coupled with the fact that the door was solid wood sheathed on both sides with metal, made opening the door difficult. The door was so heavily fortified that Neuenschwander lost his balance when he first pried it, and fell down a flight of stairs. After he returned with the bar, he resumed prying. Courtney aided him with a ramming device, using it to hammer the pry bar into place.

After a minute, they succeeded in forcing the door. Several officers rushed into the apartment. The only person inside was a young woman. About fifteen minutes later, the police found a hidden trap door in the apartment, which led to an empty attic crawlspace. There, Neuenschwander found Johnson hiding.

After Johnson's apartment was secured, Detective Romanaggi kicked open a locked hallway door, which gave access to a spiral staircase leading down to the first floor. Once downstairs, he proceeded through a maze-like hallway to a set of back-to-back doors, both with dead bolts. Because one was locked, he kicked it open. Inside, there were several rooms, where the police found large amounts of contraband. The double dead bolted doors were adjacent to the laundry area, and the rooms beyond them were the "locked storage area" the informant had referred to.

Johnson had access to the rooms beyond the double doors. Later in the search, the

---

1. Testimony at trial, included here only for illustrative purposes, revealed that the building was built as a church. Photos of it indicate that at least two additions were built onto the original structure. Other more recent architectural oddities included a hidden trap door which led from the ceiling of defendant's apartment to an empty attic, and a hidden room behind a false wall under a staircase. Under the carpeting of this room, police found two holes in the floor. One contained a large aluminum briefcase stuffed with marijuana. The other contained a safe set in concrete, which held about 2000 grams of 95% pure cocaine.

police found a set of keys that opened the doors to these and other first floor doors. The key ring was found in defendant's second floor apartment, and had the name "Martin" written on it.

The search lasted about twelve hours and involved twenty-six police officers and two deputy district attorneys, though all did not participate at one time. In areas described in the warrant as belonging to Marty, the police found large amounts of cocaine, marijuana, and cash, as well as two pistols and drug paraphernalia.[2] As predicted by the informant, a briefcase in Marty's apartment contained a large amount of cocaine. The police also found contraband in unit nine, Doug's apartment, but this was not offered as evidence.

Appropriate limits were placed on the search. It is true that all officers did not attend the meeting, had not read the warrant, and may not have been aware of the full scope of the search. This was not necessary, as these officers operated at the direction of others who were familiar with the warrant.

In accordance with the warrant, some units in the building were never opened or searched. These units included a first floor bike shop and two second floor residences. The police did search one area not specifically mentioned in the warrant, a workroom near both the red door and the spiral staircase that led to the first floor storage area. Contraband found in the workroom was not offered as evidence. While there may have been some minor confusion as to the scope of the search on the first floor, this was understandable given the puzzling floor plan. The area was also locked, and could not be visited before the search to obtain an exact description.

## DISCUSSION

Defendant raises several arguments in his motion to suppress evidence. First, he argues that the police lacked probable cause for the search. Second, he argues that the warrant lacks the requisite particularity. Third, he contends that the way in which the police entered the red door and doors inside it violated federal and state "knock and announce" statutes. I reject each argument.

1. *The Warrant Was Supported By Probable Cause.*

Defendant argues that the warrant did not state probable cause. He relies solely on the federal constitution.

The parties agree that validity of the warrant is controlled by *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), where the Court established a "totality of the circumstances" test.

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis ... for conclud[ing] that probable cause existed."

462 U.S. at 238–39, 103 S.Ct. at 2332.

The Court in *Gates* also stated that a reviewing court should give great deference to the magistrate's probable cause determination. *Id.* at 236, 103 S.Ct. at 2331. Following this standard, the Ninth Circuit recognizes that a reviewing court may not reverse unless the magistrate's conclusion is clearly erroneous. *United States v. Stanert,* 762 F.2d 775, 779 (9th Cir.1985).

Defendant's central probable cause argument appears to be that the warrant does not state probable cause because the informant's tip is inadequate. I disagree.

---

**2.** Evidence during the hearing and the trial showed that over ten pounds (over 4500 grams) of cocaine was seized, much of which was about 95% pure. About $40,000 in cash was found.

Drug paraphernalia included two scales, several containers of "cut" powder used to dilute the cocaine, a receipt for 4,000 very small zip-loc bags, drug recipes, and several other items.

To credit a confidential source's information in making a probable cause determination, the affidavit should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way. *United States v. Landis,* 726 F.2d 540, 543 (9th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984).

■ An informant's reliability and accuracy are strengthened by independent police investigation that confirms details of the informant's tip, the informant's past reliability, and corroboration by anonymous tips. Tips based on the informant's personal knowledge also support an inference of reliability. *Gates,* 462 U.S. at 241–45, 103 S.Ct. at 2333–35; *United States v. Miller,* 753 F.2d 1475, 1480 (9th Cir.1985); *Landis,* 726 F.2d at 543.

■ The informant's tip here satisfies these standards. There is more than enough corroboration of the informant's tip. Examples of this include the green pickup truck, and Johnson's alias and status as apartment manager. The informant gave a relatively detailed description of the building, considering the difficulty in describing it. Courtney corroborated this during his visit. The informant had also personally observed Johnson in recent possession of cocaine at the place to be searched. The informant had been reliable in the past, and his tip was corroborated by the anonymous complaints.

Johnson argues that the informant's tip was inadequate because Johnson could not drive the pickup, his driver's license having been suspended. Johnson concedes, however, that others drove him around in the truck, and that it belonged to him. I also question the credibility of Johnson's self-serving testimony that he did not drive.

Johnson also argues that the informant's description of the briefcase was so inadequate as to justify suppressing all evidence. The informant said the case was black. The police found a case in Johnson's apartment that was dark brown. This difference is not material. Defend-

ant's other arguments are not worth mention. The informant's tip and the police corroboration of it satisfy *Gates* and the Circuit's caselaw.

### 2. *The Warrant Satisfies The Particularity Requirement.*

Johnson also challenges the particularity of the warrant, insofar as it described the places to be searched, the things to be seized, and their relation to one another. Once again, Johnson relies solely on the fourth amendment to the federal Constitution.

■ The fourth amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend IV. The particularity requirement protects the right to be free from unbounded general searches. Practical accuracy rather than technical precision governs in determining whether a search warrant adequately describes the premises to be searched. A warrant is valid if the description is sufficiently definite to enable the executing officer to ascertain and identify the place to be searched and the objects to be seized. The specificity required depends heavily on the factual circumstances of each case. *United States v. Williams,* 687 F.2d 290, 293 (9th Cir.1982).

Johnson's first point is that the apartment behind the red door could be reached from a "private" stairway from Morrison Street. The entrance to this stairway had a separate address number tacked above it, 1731. The affidavit makes note of this, but the warrant uses another address, 731 Eighteenth Avenue.

Johnson contends that because the warrant did not use the address of the separate entrance, 1731 Morrison, the particularity requirement was violated. I disagree. Johnson's apartment building was located on the corner of Eighteenth and Morrison, as the affidavit notes. The number 731, surprisingly similar to the Morrison number, was written in black marker ink on the siding above the entrance. A ten-button

buzzer box hung in the alcove to this entrance. There is no evidence of any buzzers or door bells on the other entrance. This made the entrance on Eighteenth appear to be the main entrance, making it the logical one to use. There is no dispute that Johnson's apartment was easily reached by using this entrance. Because the officers planned to search other units in the building, naming one entrance promoted efficiency without denigrating defendant's fourth amendment rights.

Defendant also contends that the warrant violated the particularity requirement by failing to adequately specify the places to be searched. He notes that the police searched the workroom, though the warrant did not direct this, and that the police spent over twelve hours on the premises. The search of the workroom, while possibly illegal, was understandable given the maze-like structure of the building. Moreover, Johnson never established a recognizable privacy interest in the workroom, and no evidence found in it was offered. The time spent was also reasonable considering the building's layout, its many hiding places, and the large amount of contraband seized. Johnson's argument would in effect require a narcotics informant to specify exactly where a dealer hid his drugs. No intelligent dealer would furnish this information to anyone but his closest associates, and I am unwilling to require that informants be drawn from such a narrow band of persons.

Johnson also testified that the area behind the red door was divided into two units, numbered five and six. He testified that different persons lived in each, and that he occupied unit five, an apartment with a kitchen, private bath, and other rooms, and not unit six. He testified this was only a sleeping room whose occupant could use the common bathrooms in other parts of the building. Johnson contends that the failure to use these numbers in the warrant again violated the particularity requirement.

The failure to specify these numbers was insignificant. *See United States v. Gil-*

*man,* 684 F.2d 616, 618 (9th Cir.1982) (warrant that did not disclose multiunit character of building not void where officers' surveillance of building did not alert them to this); *United States v. Whitney,* 633 F.2d 902, 907 n. 3 (9th Cir.1980) (warrant describing premises as single building when it actually contained two units was sufficient under circumstances), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Because the red door leading to units five and six was locked, it would be unreasonable to hold that Courtney should have obtained the numbers inside, if they even existed. I regard Johnson's testimony in this matter with great suspicion, especially given his contention in his standing memorandum that he owned numerous items found in the "other" unit, number six, such as his wallet, keys, desks, file cabinets, and business records. There was no evidence that he had abandoned these highly personal items.

Finally, Johnson challenges the particularity of the description of the items to be seized. The warrant authorized seizure of:

Cocaine in violation of ORS 475.992, items of identification, narcotics paraphernalia, all monies such as currency and negotiable instruments; securities and all items of property and other things of value that are profits or proceeds of trafficking in controlled substances, and all money and properties that were used to facilitate trafficking of controlled substances, all evidence of the crime of possession of a controlled substance or delivery of a controlled substance....

■ This description satisfied the particularity requirement. A warrant must enable officers to distinguish between legally and illegally possessed property on the basis of objective, articulable standards. A warrant may direct seizure of a generic class of contraband items, so long as the standards in the warrant reasonably guide the officers in avoiding the seizure of protected property. *Cf. United States v. Pollock,* 726 F.2d 1456, 1465–66 (9th Cir.

1984). The warrant here meets these standards.

■ Johnson cites *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982). In that case, the Ninth Circuit held that the particularity requirement was violated by an IRS warrant authorizing seizure of all books and papers that were "fruits or instrumentalities" of a violation of a particular section of the tax code. *Cardwell* is distinguishable. While the warrant here contains some generic classifications, it is far more specific than the warrant in *Cardwell*. The present case, like *Pollock*, also involves the shadowy world of narcotics trafficking, where exacting descriptions of particular evidence to be found are far more difficult to obtain than in tax cases. I also accept the testimony of the experienced officers here that they could distinguish between street and prescription drugs. The warrant here did not violate the particularity requirement.

3. *The Federal And State Knock and Announce Statutes Were Not Violated.*

Defendant contends these statutes were violated because after the police knocked on the red door and announced their identity, they failed to wait a sufficient period before forcing the door. He also contends that the officers violated the statute by kicking in an inner door to what he describes as unit five. No other violations are alleged. While defendant relied solely on the federal statute in his brief, he cited the state statute in his oral argument. I therefore consider both statutes. Neither was violated.

The federal knock and announce statute, 18 U.S.C. § 3109, provides:

*Breaking doors or windows for entry or exit*

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The Oregon statute, O.R.S. 133.575(2), provides:

The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be.

■ These statutes are violated if officers immediately force a door after knocking and announcing, without waiting a reasonable period for occupants to respond to their request. The state statute does not require suppression for individual violations of this requirement, but the federal statute does. Neither statute requires suppression, however, where exigent circumstances justify the violation. *United States v. Ramirez*, 770 F.2d 1458, 1460 (9th Cir.1985) (exigent circumstances); *State v. Bishop*, 288 Or. 349, 352–53, 605 P.2d 642 (1980) (individual violations); *State v. Brothers*, 12 Or.App. 435, 439–40, 507 P.2d 398 (1973) (exigent circumstances).

■ Exigent circumstances existed here. Johnson's apartment was protected by a heavy wood and metal door that opened out, which would obviously be difficult to open. The officers' efforts bear this out. The door was so heavily fortified that one officer lost his balance when he first leaned into the pry bar, and fell down a staircase. Two officers then used up about a minute to force the door, using both the pry bar and the ramming "key." Narcotics are easily disposable, and Courtney worried that Johnson would flush the drugs if they did not pry immediately. It would be unreasonable to require the police to wait another minute before beginning to force such a heavy door.

Johnson disputes the need for quick action by the police. He points out that several officers testified that they heard no scurrying or flushing noises inside his apartment before they pried the door. Nevertheless, the door was heavy enough that a reasonable person could expect it to muffle noises inside, particularly in an old building.

I also note that after the police knocked and announced, Johnson had a minute to answer the door before the police finally entered. He made no effort to do so, and instead ran to the attic and hid, leaving his companion behind. The entry of the red door was proper.

Johnson also challenges the entry of the inner doors. He appears to argue that the red door was like an outer door to an apartment building. Were this so, it would follow that the officers should again knock and announce before entering the main doors into the "separate" units, five and six. The red door was not like an outer door. Rather, it gave direct access to Johnson's apartment. I reject Johnson's testimony that the units beyond the red door were separate, and find that he used them as one functional unit.

Johnson's attorney contends that after the police pried the red door, they kicked in a second, dead bolted door that led to unit five. There is no evidence that this occurred, and I make no finding that it did. At the suppression hearing, Courtney testified that after the police opened the red door they entered a small hallway. A doorway on the right side of the hallway led into the south half of the apartment. The door was open, and the police entered it. There was no testimony that they knocked and announced before entering this door. There was also no testimony at the hearing that the police kicked the door, or any other inside the apartment. Even if they had, it is questionable that this would require suppression.

■ After the police made their initial entry through the red door, they were not required to knock and announce before entering each inner door. *See United States v. Remigio*, 767 F.2d 730, 732 n. 2 (10th Cir.1985) (once law enforcement officers lawfully enter house, they need not always comply with knock and announce statute before entering every closed door within the residence); *see also United States v. Crawford*, 657 F.2d 1041, 1044–45 (9th Cir. 1981) (after lawful entry into front door of house, entry into bedroom without knock

and announce does not violate statute, occupant's privacy interests must also be weighed against state's interest in safety of officers). In this case, the officers entered the apartment of a suspected drug dealer. Dealers are known to often be heavily armed. Announcing their entry into each room could have placed the police in unreasonable danger.

■ Police also need not knock and announce where this would be a useless gesture. *United States v. Wylie*, 462 F.2d 1178, 1186–90 (D.C.Cir.1972). The police presumably knew that if Marty was inside, he was aware of their presence. The noise created by the officers' efforts with the red door guaranteed this. The police had already knocked and announced at this door, with no response. To do so again at each inner door would have been useless. Knocking and announcing before forcing the doors leading to first floor areas would also have been useless, as these areas were known to be storage areas that were presumably unoccupied. Neither statute was violated here.

## CONCLUSION

Defendant's motion to suppress under the fourth amendment and the federal and state knock and announce statutes is denied.