UNITED STATES of America

v.

Quintin Darrlly JEFFRIES.

No. 93–80158.

United States District Court,
E.D. Michigan, S.D.

June 9, 1993.

William J. Sauget, Asst. U.S. Atty., for plaintiff.

Daniel J. Blank, Bingham Farms, MI, for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

ROSEN, District Judge.

### INTRODUCTION

This matter came before the Court on June 3, 1993 for an evidentiary hearing on Defendant Quintin Jeffries' Motion to Suppress Evidence. Defendant Jeffries has been indicted and charged with Attempted Possession with Intent to Distribute Cocaine. The charge arose as a result of the DEA's execution of a search warrant at Jeffries' home following the interception and detention by postal authorities of a package mailed from Los Angeles, the authorities' confirmation (via a drug canine sniff) that the package contained drugs, and the subsequent sounding of an electronic beeper "package opened" alarm which was placed inside the package pursuant to a court order while the package was detained by postal authorities.

Jeffries has sought the suppression of the evidence of the drugs found in the package and the other evidence (drugs, drug cutting agent and drug paraphernalia) found by agents during the search of his residence.

In support of his suppression motion, Defendant argued in his Brief and at the evidentiary hearing, first, that the postal authorities in Los Angeles unlawfully removed the package from the normal course of mail without reasonable suspicion to believe that it contained contraband and that the postal authorities in L.A. and Detroit "detained" the package for an unreasonable length of time prior to its ultimate delivery to Jeffries.

Second, Defendant argued that, in executing the search warrant for the search of his residence, postal authorities and DEA agents violated the federal "knock and announce statute", 18 U.S.C. § 3109, and that the Strathmoor search warrant was overbroad, and, as such seizure of evidence from his residence was unlawful.

After receiving evidence and hearing the testimony of the Government's witnesses and Defendant Jeffries on June 3, 1993, the Court ruled on the record from the bench on Defendant's first suppression argument, to-wit, the Court DENIED Defendant's Motion to Suppress with respect to his argument that the postal authorities in Los Angeles unlawfully removed the package from the normal course of mail without reasonable suspicion to believe that it contained contraband and that the postal authorities in L.A. and Detroit "detained" the package for an unreasonable length of time prior to its ultimate delivery to Jeffries.

The Court, however, took the issue of Defendant's allegations of violation of the federal "knock and announce statute", 18 U.S.C. § 3109, and his contention that the agents unlawfully seized evidence from his residence,[1] under advisement.

Having reviewed the testimony and evidence received at the hearing on June 3, 1993 and having further reviewed and considered the legal arguments presented by the Defendant and the Government in their respective Briefs, the Court is now prepared to rule on Mr. Jeffries "knock and announce" violation and "overbroad search warrant" arguments. This Opinion and Order sets forth that ruling.

### FACTUAL BACKGROUND

The events leading up to Jeffries' indictment are as follows.

On Friday, February 12, 1993, postal authorities in Los Angeles intercepted an "Express Mail" package that had been mailed that day in L.A. which was addressed to the "Jeffries Family" at 14345 Strathmoor, Detroit, Michigan 48227. Upon examination of the package and follow up investigation, Postal Inspector Norbert Jaworski became suspicious of the parcel as it fit a number of the "drug package" profile characteristics, including: (1) the fact that the package was from a known drug area (Hancock) in Los Angeles to a known drug destination point (Detroit); (2) the weight and mass of the parcel; (3) the package was marked "fragile"; (4) the edges of the package were completely sealed with tape; and (5) the name on the return address ("Jeffries") was the same as the addressee's. Inspector . Jaworski found the telephone number of the return address and telephoned the owner of that residence. ·The owner, Mr. Cotton, indicated that no one with the surname "Jeffries" lived at that address.

Because of these concerns, Inspector Jaworski called Postal Inspector Gregg Fiorina in Detroit and alerted him to the package and the fact that it was being sent out to Detroit. Because February 13 and 14 were weekend days and February 15 was a holiday (Presidents' Day),· the package was not received by Inspector Fiorina until Tuesday, February 16, 1993.

On that day, the package was subjected to a controlled canine drug sniff which alerted positive to the presence of a controlled substance. Based upon the canine sniff, a search warrant to open the package was obtained that same day.

Upon execution of the search warrant later that day, the parcel was found to contain approximately one kilogram of cocaine. Upon confirmation of the presence of cocaine in the package, a second search warrant was obtained for the 14345 Strathmoor residence, contingent upon delivery of the parcel to that address. A court order authorizing the electronic monitoring of the package via the placement of an electronic beeper device inside the package was also obtained on February 16. The cocaine package itself was also dusted with a fluorescent powder.

---

1. Defendant did not address his overbroad search warrant argument at the June 3, 1993 hearing, but since he made no affirmative indication of withdrawal of that argument (which was addressed in Defendant's Brief), the Court will rule on this argument, as well as the "knock and search" violation argument, in this Opinion and Order.

The next morning, February 17, a postal inspector, posing as a postal carrier, made a controlled delivery of the package to the Strathmoor residence.[2] Defendant Jeffries signed for and accepted delivery, placed the package in the residence and then immediately left the residence in his car. Jeffries was kept under surveillance while driving in his car. He was observed by the surveillance team to engage in "counter-surveillance" measures as he drove around. Within a few minutes, Jeffries returned to the Strathmoor residence.

Shortly after Jeffries returned home, the electronic beeper device placed inside the package went into the alarm mode, indicating that the parcel had been opened. The surveillance units immediately proceeded to the residence, and the officers executed the Strathmoor residence search warrant.

## PERTINENT FACTS REGARDING THE EXECUTION OF THE STRATHMOOR RESIDENCE SEARCH WARRANT

According to the testimony of Inspector Fiorina who participated in the execution of the Strathmoor search warrant, the officers did not enter the residence unannounced. Rather, when Fiorina arrived at the front door of the residence, he "pounded" on the door and yelled, "Police—Search Warrant," to announce the officers' presence. After waiting a while and not receiving any response, the front door was forced open.

The door opened onto a flight of stairs leading to an upstairs flat. According to Inspector Fiorina's testimony, as he was climbing the stairs, he continued to loudly announce the officers' presence and purpose by shouting, "Police—Search Warrant". At the top of the stairs, on the landing in front of a second door, Fiorina testified that he again shouted "Police—Search Warrant." He did not, however, knock on this second door before opening it.

Defendant Jeffries testified that he was inside the house and heard "something unusual" on the stairway and thought it was probably the police because he suspected he was under surveillance. However, he stated that he did not hear the police yelling before they opened the upstairs door and entered his flat.

During the execution of the search warrant, in addition to the L.A. parcel, the agents seized various notes and "tally sheets" detailing suspected drug transactions found in a dresser drawer and in a floor safe, and sandwich baggies and a bottle of Inositol, a common cutting agent, found in a footlocker.

## DISCUSSION

### COMPLIANCE WITH THE "KNOCK AND ANNOUNCE" REQUIREMENTS OF 18 U.S.C. § 3109

■ Jeffries contends that the postal inspectors and DEA agents violated the "knock and search" requirements of 18 U.S.C. § 3109.

Section 3109 provides:

**§ 3109. Breaking doors or windows for entry or exit**

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him the execution of the warrant.

18 U.S.C. § 3109.

■ The purpose of Section 3109 is to restrict the authority of the government to intrude upon the privacy of its citizens, and to protect law enforcement officers who might be mistaken as unlawful intruders if they were to enter a residence unannounced. *Miller v. United States*, 357 U.S. 301, 306–308, 312 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332 (1958).

If evidence is procured in violation of § 3109, that evidence must be suppressed. *Miller, supra; United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.1990), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

---

**2.** The Strathmoor residence is a two-family (i.e., upper and lower flat) residence. Each flat has a separate street address. 14345 Strathmoor is the address of the upper flat.

Jeffries does not dispute that, upon arriving at the outer door to the two-family flat on Strathmoor, the officers knocked and announced their presence, and receiving no response, forced the downstairs outer door open. Once inside, the officers climbed the stairway to the second floor. Jeffries contends that, upon arriving at the door at the top of the stairs which leads into the upper flat, to have complied with Section 3109, the officers would have had to have knocked on that upstairs door before opening it because it was, effectively, the entrance to a separate residence.

The pertinent Section 3109 decisional law is clear: "Once law enforcement officers lawfully enter a house, they need not always comply with the knock and announce statute before entering every other closed door within the residence." *United States v. Remigio*, 767 F.2d 730, 732 n. 2 (10th Cir.1985), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985), citing *United States v. Crawford*, 657 F.2d 1041 (9th Cir.1981).

In *Remigio*, the issue was whether, after officers, who had knocked on the outside rear door to a house and announced their presence or purpose, forced the outside door open and gained entry onto a small landing, were required to knock on a second door which lead into the kitchen of the house and announced their presence again. The Tenth Circuit held that they did not.

The Ninth Circuit has consistently taken the position that *where the first or contemporaneous entry is lawful under § 3109, a defendant cannot complain of the unlawfulness of subsequent entries. See. Cognetta v. United States*, 313 F.2d 870 (9th Cir. 1963) (no violation of Section 3109 where officers entered through the front door after announcement of authority and purpose prior to an unannounced rear door entry by other officers); *Vanella v. United States*, 371 F.2d 50 (9th Cir.1966), *cert. denied*, 386 U.S. 920, 87 S.Ct. 883, 17 L.Ed.2d 790 (1967) (lawful entry through rear door before or contemporaneous to forced entry through front door held sufficient); *Russo v. United States*, 391 F.2d 1004 (9th Cir.1968), *cert. denied*, 393 U.S. 885, 89 S.Ct. 195, 21 L.Ed.2d 161 (1968) (lawful front door entry contemporaneous with a forced entry through the rear door); *United States v. Crawford, supra* (officers executing an arrest warrant who had knocked and announced before forcing the door open and entering the residence were not required to knock and announce again before opening a bedroom door inside the house.)

In *Crawford*, the court concluded that the respect for privacy purpose of § 3109 was adequately preserved because adequate notice was given loudly at the front door, with a proper interval of time observed before breaking open the door. Therefore, the court held that there was no need for additional "knock and announce" compliance at the inner door.

Similarly, in *United States v. Bustamante–Gamez*, 488 F.2d 4 (9th Cir.1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), the court held that the announcement of authority and purpose at the front door simultaneous to the opening and entry of a garage door by another officer without announcement constituted sufficient compliance with Section 3109. The court stated, "[O]fficers are not required to announce at *every* place of entry; one proper announcement under section 3109 is sufficient." *Id.* 488 F.2d at 10.

More recently, the outer door/inner door issue was addressed by the federal district court in Oregon in *United States v. Johnson*, 643 F.Supp. 1465 (D.Or.1986), *aff'd*, 822 F.2d 62 (9th Cir.1987), *cert. denied*, 496 U.S. 911, 110 S.Ct. 2599, 110 L.Ed.2d 280 (1990). That case involved a scenario very similar to the one at issue here. In *Johnson*, the officers knocked and announced their authority and purpose at a door inside of an apartment building. When no one responded, they broke down the door and found themselves in a passageway, at the end of which was another door which led into the apartment unit the officers sought to search. The officers did not knock or announce their presence at this second door; instead they just broke the door down. The district court found no "knock and announce" violation and the Ninth Circuit affirmed.

In so ruling, the district court observed that breaking down the outside door created enough noise such that the defendant, who was inside the apartment, had been afforded sufficient notice to protect his privacy rights, and, because drugs—which were the object of the search warrant—are easily disposable, "exigent circumstances" existed to excuse any lack of knock and announce on the inner door to prevent destruction of evidence. 643 F.Supp. at 1471.

Here, the outside door at which the officers knocked and first loudly announced their authority and purpose, opened directly onto the stairway which led directly to the door to the upper flat. Inspector Fiorina testified that he continued to yell, "Police—search warrant" as the officers climbed the stairs, and that he yelled that again when they reached the upstairs door. Although Defendant testified that he did not hear the officers shouting, he admitted he heard glass breaking and loud noises coming from the stairway and that he thought it was probably the police.

Although the facts here present a close case given the pertinent decisional law, the Court finds that under the circumstances presented, Mr. Jeffries was provided sufficient notice of the presence of the authorities such that there was no intrusion on his privacy rights.

Further, the Court finds that sufficiently "exigent circumstances" existed in this case to excuse "strict" compliance with § 3109. In this case, the authorities knew that easily disposable drugs were on the premises and in the possession of Mr. Jeffries who was in the house at the time of the execution of the search warrant. Before commencing execution of the warrant, the officers further were alerted, by the sounding of the electronic beeper device placed in the package, that Jeffries had opened the package containing the cocaine. Jeffries testified that he was aware he was being watched and believed that it was the police that were watching him.

Given these circumstances, the Court finds that the officers' quick actions were reasonable to prevent destruction of narcotics evidence. The Sixth Circuit has expressly found "exigent circumstances" sufficient to excuse strict compliance with § 3109 when officers act to preserve narcotics evidence. *See United States v. Nabors, supra,* 901 F.2d at 1354–1355.

For these reasons, and by application of the above-cited authorities, the Court finds that the officers executing the search warrant at the Strathmoor residence did not violate 18 U.S.C. § 3109.

### SEIZURE OF EVIDENCE FROM JEFFRIES' RESIDENCE

■ Jeffries' final argument is that the officers unlawfully seized evidence in addition to the LA package from his residence. He contends that the search warrant was overbroad because it authorized the seizure of other drug-related items from the residence when the only knowledge of drug activity known to the officers was the controlled delivery.[3] There is no legal merit to this argument.

The Sixth Circuit has expressly held that knowledge of a controlled delivery is enough to establish probable cause to justify the search of a residence for other drug-related items. *United States v. Rey,* 923 F.2d 1217 (6th Cir.1991). In rejecting the defendant's overbroad search warrant argument, the *Rey* court joined the Fourth, Seventh, and Ninth Circuits which all have likewise held that a controlled delivery is sufficient to establish probable cause for a search warrant authorizing a search for drug paraphernalia at the premises to which the package was addressed. *See United States v. Washington,* 852 F.2d 803, 804–805 (4th Cir.1988), *cert. denied,* 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988); *United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir.1982); *United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978).

Based on the foregoing authorities, the Court finds that the search warrant in this

---

3. The search warrant at issue authorized the seizure of "records concerning the receipt, possession and sale or distribution of controlled substances" and "cutting agents, drug paraphernalia, and other indicia of drug distribution, and other controlled substances."

case properly authorized the seizure of other drug-related items.

## CONCLUSION

For all of the foregoing reasons, and for the further reasons stated by the Court on the record on June 3, 1993,

IT IS HEREBY ORDERED that Defendant Jeffries' Motion to Suppress be, and hereby is, DENIED.